14959

PAGE v. PILOT LIFE INS. CO.

(5 S. E. (2d), 454)

July, 1938.

60

*Messrs. Hemphill & Hemphill,* for appellant,

*Messrs. Smith, Wharton Hudgins* and *McDonald, Macauley & McDonald,* for respondents,

November 3, 1939.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The plaintiff brought action upon a complaint which alleged that the plaintiff-appellant was seduced by the "wilful, deliberate, malicious, fraudulent and deceitful scheming and misrepresentations" of respondent and induced to resign and give up steady employment whereby he was earning a fair livelihood for himself and family; that these false representations were made by the district manager of the respondent, S. F. Cook. The complaint at great length and minutely, alleges that W. B. Clement, the superintendent of the Industrial Department, D. W. Reed, superintendent of agencies of the respondent, and S. F. Cook, manager of respondent, conspired to eliminate the appellant as a competitor in the field of insurance, he being the agent of the Liberty Life Insurance Company in the territory, in part, where the Pilot Life Insurance Company operated, and to accomplish their aims entered into negotiations with the plaintiff to induce him to give up his employment with the Liberty and take employment with the Pilot Life Insurance Company, and by false representations and promises, which they had no intention of carrying out and complying with, they induced plaintiff to resign his employment with Liberty Life Insurance Company and to present himself to Pilot Life Insurance Company ready for work with it. Thereupon they bluntly and with malice informed him that they never intended to give him employment with Pilot Life Insurance Company, but only intended to cause him to abandon his employment with Liberty Life Insurance Company.

The answer admits the corporate capacity of Pilot Life Insurance Company and Liberty Life Insurance Company; that W. B. Clement, D. W. Reed and S. F. Cook were agents and employees of Pilot Life Insurance Company but denies that either D. W. Reed or S. F. Cook had any authority to employ agents of or for Pilot Life Insurance Company without the approval of defendants' home office;

admits that plaintiff was an employee of Liberty Life Insurance Company and that he had at one time been in the employ of the defendant; admits that during the month of May, 1939, plaintiff was informed at defendant's office in Chester, S. C., that his application for a position with defendant had been rejected by defendant; denies the allegations of the complaint not expressly admitted.

On the call of the case for trial counsel for defendant moved that plaintiff be required to elect whether he would go to trial "for breach of contract, or based on fraud". To which plaintiff's counsel replied: "It is *fraud* and *deceit* and interference with a man's business." Upon that issue they went to trial.

At the conclusion of the testimony for plaintiff, the defendant moved for nonsuit on the grounds:

"1. That there has been a total failure on the part of the plaintiff to prove the material allegations of the complaint relative to the charge of fraudulent conspiracy.

"2. That, at most, the evidence tends to show only a breach of contract, and that, this being a tort action, there can be no recovery on this action for a breach of contract; and that the mere failure to perform or carry out the contract is not any evidence of fraud."

After argument, his Honor said:

"Right or wrong, my mind is made up. If I am wrong, it is very easy to correct me in the Supreme Court. I have got to give you my best judgment.

"This is not an action for the breach of a contract, or for the breach of a contract accompanied by a fraudulent act. If it were, I would unhesitatingly have to send the case to the jury. But the action, as very frankly stated by counsel, and as shown by the complaint, is—and the complaint not only states it once, but several times—that these certain people naming them, with the Pilot Life Insurance Company, acting through these people, naming them, to begin with, conceived the idea, the fraudulent scheme, that they would get

the plaintiff out of the employment of the Liberty Life Insurance Company; and that they never intended to employ him at all, but, all the way through, it was a fraudulent scheme to accomplish said unlawful purpose. Now fraud has never been presumed; that has been stated a million times, I suppose by the Court. The Court has stated further that you cannot take the conduct of the parties and give it an unsound construction. Some of the old cases, in fact, the bulk of the authorities hold that that conduct, not being a—the insufficient evidence of fraud, probably our Court would hold it is sufficient to show it by the preponderance of the evidence.

"Now, I haven't been able to see in this case a thing in the world, except the testimony showing that a contract—tending to show that a contract had been made, and that it was breached.

"Now, to go into the testimony of Cook, I don't think it is competent. Cook, it would not be contended that he had any authority to bind the Company by employing Page. He didn't occupy one of the positions that plaintiff contends would have given him that power.

"Now, to wind up, for it is all over with, we have in the testimony of Cook; but, that declaration of Cook, giving a name and construing what has been done all the way through by other people. I think the testimony is clearly incompetent. I say, it is not his testimony, but it is the declarations —well, feeling as I do about it, right or wrong, I am going to grant the non-suit; and I am not saying any more about it, because I don't feel very well this morning, and I am simply giving you the result of my thought."

From this order the plaintiff appeals on seventeen exceptions.

In our judgment these exceptions make not so many issues, the settlement of which will determine the appeal.

Does the complaint state a cause of action for fraud and deceit?

Is there evidence in support of such cause of action which required that the case be submitted to the jury?

Was the presiding Judge correct in holding that the testimony of S. F. Cook be stricken from the record; and was there evidence other than that of Cook in support of the allegation that Clement, Reed and Cook joined in the alleged conspiracy?

It may be conceded that the general rule is that: "Deceit or fraudulent representation, in order to be actionable, must relate to existing or past facts, and the fact that a promise made in the course of negotiations is never performed does not in and of itself constitute nor evidence fraud. * * * " *Coleman v. Stevens,* 124 S. C., 8, 117 S. E. 305, 307.

But that is not the final conclusion of the matter. In that same case it is said: "A future promise is not fraudulent, unless such a future promise was part of a general design or plan existing at the time, made as part of a general scheme to induce the signing of a paper to make one act, as he otherwise would not have acted, to his injury."

It is the contention of the appellant that his complaint alleges that the agents and officers of the respondent, in their negotiations with him, acted in pursuance of just such design in their effort to induce him to resign from employment with the Liberty Life Insurance Company for the purpose of accepting employment with the Pilot Life Insurance Company, with the misrepresentations that he would be given such employment, but which promise they never intended to perform, but intended to violate; in other words they intended to break his connection with Liberty Life and leave him stranded without employment.

In the case of *Branham v. Wilson Motor Company,* 188 S. C. 1, 198 S. E. 417, 418, this Court said:

"On the other hand, all acts of deceit and fraud are not only reprehensible, but are actionable in cases where a future promise, falsely made at the time, was a part of a general

design or plan existing at the time, made as a part of a general scheme, to induce the signing of a paper, or to make a person act, as he otherwise would not have acted, to his injury.

* * *

"No Court will tolerate abuses conceived in deceit and consummated in fraud. * * *"

Our own case of *Palmetto Bank & T. Co. v. Grimsley,* 134 S. C, 493, 133 S. E. 437. 438, is reproduced in 51 A. L. R. 42. That case held: "* * * that the making of a promise (which has induced the execution of a contract), by one who had no intention at the time of performing it, constitutes a fraud, on account of which the contract may be rescinded."

There is an exhaustive annotation in 51 A. L. R. to this case, which contains citations from the Courts of practically all of the states, and of the Federal Courts. The annotator recognizes the rule that a promissory statement is not ordinarily the subject of either an indictment or an action, and then goes on to show that the rule is almost universally recognized that: "* * * when a promise is made, the promisor by necessary implication, asserts a present and bona fide intention to perform, and if, therefore, the intention to perform does not exist, there is a misrepresentation of a fact upon which fraud may be predicated, the gist of the fraud in such case being not the breach of the agreement to perform, but the fraudulent intent of the promisor and the false representation of an existing intention to perform, when such intent did not in fact exist." 51 A. L. R., pages 63, 64, 65, 66. Citing many authorities, too numerous to mention.

The case of *Cook v. Metropolitan Life Insurance Company,* 186 S. C., 77, 194 S. E., 636, 639, bears a striking analogy to the present case in its pleadings and proof. There the initial relation of fact is that the agent of the defendant took from the plaintiff his insurance policy, which had a

paid up value, upon the representation that he would have it revived and returned to him. This was not done; plaintiff made many applications for its return and was put off by the officers and agents of the company with all sorts of promises and false representations, until the plaintiff grew weary of such treatment and brought action. The case is in such direct parallel with this, and the opinion of the Court is in such apt accord with the views which we hold in the present case that we venture to quote freely from it:

"* * * The allegations of the complaint substantially state a cause of action for unlawful and fraudulent conversion, but it was tried upon the theory of fraud and deceit.

"The appellant contends that no actionable fraud has been proved; that the plaintiff was not deceived in any way; that the plaintiff suffered no damage; and that the facts conclusively show no conduct on the part of the defendant inconsistent with fair and honest dealing. It is said that the insured has lost nothing, has been deprived of nothing, and is in the identical position he was in before.

"In *Coleman v. Stevens,* 124 S. C., 8, 117 S. E., 305, 307, the Court approved the following charge to the jury:

" 'Deceit or fraudulent representation, in order to be actionable, must relate to existing or past facts, and the fact that a promise made in the course of negotiations is never performed does not in and of itself constitute nor evidence fraud. A mere breach of a contract does not constitute fraud. * * *

" 'A future promise is not fraudulent, unless such a future promise was part of a general design or plan existing at the time, made as part of a general scheme to induce the signing of a paper or to make one act, as he otherwise would not have acted, to his injury.'

"Where one promises to do a certain thing, having at the time no intention of keeping his agreement, it is a fraudulent misrepresentation of a fact, and actionable as such.

*Hight v. Richmond Park Imp. Co.,* 47 App. D. C., 518; *Haggerty v. Key,* 100 Okl. 238, 229 P. 548. *Haddaway v. Smith,* Tex. Civ. App., 256 S. W., 965. *Bradley v. Metropolitan Life Ins. Co.,* 162 S. C., 303, 160 S. E., 71.

"Fraud may be proved by a number of concurrent or related circumstances."

In the case of *Braddy v. Elliott,* 146 N. C., 578, 60 S. E.. 507, 16 L. R. A. (N. S.), 1121, it is held that (quoting L. R. A. syllabus) :

"Taking advantage of the other party to an exchange of lands by making promises with respect to the construction of buildings on the property deeded by the promisor which the promisor does not intend to fulfill is such fraud as will entitle the other party to a rescission of the contract.

"In an action for the rescission of a contract for fraud in making promises not intended to be performed, the subsequent acts and conduct of the promisor may be submitted to the jury as some evidence of the original intent and purpose when they tend to indicate it."

The above case may also be found in 125 Am. St. Rep., 523.

In the case of *Nelson v. Shelby Mfg., etc., Co.,* 96 Ala., 515, 11 So. 695, 701, 38 Am. St. Rep. 116, this occurs: "* * * The failure to fulfill a mere promise or undertaking,—something to be done in the future,—alone, will not authorize a rescission of a contract upon the ground of fraud. It is the making of such promise, having no intention at the time to perform it, that constitutes fraud for such a contract may be rescinded. * * *"

We are satisfied that this is a rule of general application and that the complaint in the action now under review by us states such a cause of action. At the inception of the trial plaintiff was required to elect whether he would go to trial for breach of contract or an action for deceit and fraud. In ruling on the motion for non-suit, the learned trial Judge said: "This is not an action for the breach of a contract, or for the breach of a contract accompanied by a

fraudulent act. If it were, I would unhesitatingly have to send the case to the jury. * * *"

Yet it is beyond dispute that the case went to trial on the grounds of deceit and fraud in making a contract which the parties did not, at the time of making it, intend to perform. Nevertheless, his Honor, in granting the motion for non-suit, says: "Now, I haven't been able to see in this case a thing in the world, except the testimony showing that a contract—tending to show that a contract had been made, and that it was breached." Evidently, he reached the conclusion that there was no evidence in support of the allegations of the complaint that in pursuance of a conspiracy to induce Page to sever his relations with Liberty Life Insurance Company, the Pilot Life Insurance Company, through its agents Clement, Reed and Cook, led Page, by promises which they did not intend to perform, to resign from the employment of the Liberty Life Insurance Company, except that testimony given by Cook; this he struck from the record.

We shall not analyze all of the testimony; that which we reproduce is, in our opinion, sufficient to show that the Court should have submitted to the jury the question whether Clement, Reed and Cook, acting together in pursuance of a fraudulent design, induced Page to quit the service of Liberty Life Insurance Company upon their promise to employ him for the Pilot Life Insurance Company, and if they had authority to make such promises; and whether they intended to keep the promises made to him thereabout.

Respondent contends that plaintiff sought to return to the employ of Pilot Life Insurance Company, with which he had once been connected. It is in evidence that Page was with that company for about 14 years. He put in evidence the contract he then had with it, and it was introduced and allowed for the purpose of proving that then Clement and Reed had authority to hire agents for the company. There is evidence that Reed, at the time of the transaction now

in question, was district manager, or superintendent of agencies for Pilot Life Insurance Company. Another contract dated in 1931 of Page with Pilot Life Insurance Company was put in evidence, which was signed by Page and D. W. Reed as superintendent of agencies for Pilot Life Insurance Company. Another contract was put in evidence between W. B. Clement and Page, in which Clement signed on behalf of Pilot Life Insurance Company, and in the making of which D. W. Reed participated. In their answer defendants admit that W. B. Clement is, and was at the time mentioned in the complaint, superintendent of defendant's industrial department, and D. W. Reed is, and was, defendant's industrial district manager, and that the defendant S. F. Cook, a citizen and resident of Chester County, S. C., is, and was, manager of a portion of a district consisting of the counties of Chester, Union, and Fairfield, S. C., with general supervision of defendant's agents, but it denies that the said D. W. Reed and S. F. Cook, or either, or both of them, had any authority to employ or discharge agents for the defendant without the approval of the defendant's home office.

Who was in charge of the home office?

"Q. Now, they say in their answer here, something about the home office, so far as you know, who is the home office? A. W. B. Clement and D. W. Reed for the industrial department of the Pilot Life Insurance Company."

There is in evidence a letter from W. D. Page to W. B. Clement asking for an interview, and one from Clement in reply agreeing to meet Page, and a telegram to Page from W. B. Clement in these words: "Meet me Selwyn Hotel Charlotte Five PM today." Page and Clement met in Charlotte at the Selwyn Hotel; what occurred at that time and place is too long to repeat here. There is evidence from Fred Page that he went to Charlotte with W. D. Page and saw him meet W. B. Clement at the Selwyn Hotel; that Mr. Reed was with Mr. Clement.

There is in evidence a letter from W. D. Page to D. W. Reed in which he says: "I want to thank you for your interest in connection with our several conversations during the past several days and also the offer which you made possible and considered for me. And I have given some serious consideration since talking with you and Mr. Clement last night and I have decided not to consider the Spartanburg proposition at this time due to reasons which I am unable to explain in this letter at this time."

To this letter, Mr. Reed replied: "I appreciate very much your letter of the 22nd and I regret that you cannot see your way clear at this time to follow up our conversation of recent date."

April 24th, Mr. Page wrote Mr. Clement as follows: "I was in Charlotte Sunday spending the day and had the chance to discuss with Mr. Reed with reference to our conversation concerning my getting connected with the company again, and he talked very encouraging and stated he would discuss same with you within the next few days. I appreciate his attitude and also your consideration. Mr. Reed understands why I was unable to go to Spartanburg and I had hoped to get the opportunity to explain same to you, and for one of my principal reasons for my (not) moving my father and mother is both up in eighty and live five miles out in the country and I am the only one they have to depend on. I don't feel like it is necessary for me to call to your attention the length of service I have spent with the company. I feel like now I am in position to render a better service than ever before. Also I am proud of the record I made with the Co. I am now with, but I still desire to go back with the Co. I help build providing they want me. I will appreciate your interest and consideration together with Mr. Reed's in my behalf, since I still feel I should be back with the Pilot, and I want you to know too I appreciate all of your interest and considerations at all time. With best wishes, etc."

April 30th, Page received the following letter on stationery of the Pilot Life Insurance Company Home Office, Greensboro, N. C.: "I am in receipt of your letter regarding your conversation with Mr. Reed last Sunday. It may be that some time in the near future some proposition, satisfactory to you and the company, may be worked out." The letter was signed by W. B. Clement.

In granting the motion for nonsuit, his Honor said: "Now, to go into the testimony of Cook, I don't think it is competent." Cook did not testify in the case. Doubtless his Honor meant to refer to testimony given by the plaintiff as to statements made by Cook, as to statements made and things done by Reed and Clement. If there is proof of a conspiracy as alleged in the complaint, or testimony from which the jury might reasonably infer such conspiracy, then the statements of each of the conspirators were competent.

Aside from that we think there is evidence outside that relating to the statements of Cook which made it the duty of the Court to submit the issues to the jury.

The order granting the motion for nonsuit is reversed, and the case remanded for trial.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON concur.