15248

PAGE v. PILOT LIFE INSURANCE CO.

(14 S. E. (2d), 625)

Messrs. *Smith, Wharton & Huggins, McDonald, Mc-Auley & McDonald,* and *Barron, Barron & Walker,* for appellants,

Messrs. *Hemphill & Hemphill,* for respondent,

May 22, 1941.

The opinion of the Court was delivered by Mr. Acting Associate Justice G. B. Greene.

W. D. Page, the respondent herein, secured employment with Pilot Life Insurance Company, one of the appellants, in 1923, and continued in its service as local manager at Chester, S. C., until February 26, 1937, at which time he was indefinitely suspended on account of a shortage in his accounts with the company. At the time of his suspension W. B. Clement was superintendent of the industrial division of the company with offices at Greensboro, N. C.; D. W. Reed was district manager of the Charlotte district, which included the Chester office, with offices at Charlotte, N. C.; and S. F. Cook, the other appellant, was appointed to succeed Page at Chester. Clement, as superintendent, alone had authority to appoint local managers, assistant managers and sub-agents in the industrial department of the company.

Upon his suspension Page paid the amount of the shortage as disclosed by an audit of his books and was permitted to go to the company's office at Spartanburg, S. C., as assistant manager thereof, for a period of five weeks. Before the expiration of that period Page wrote Clement a letter asking that he be allowed to remain with the company at Spartanburg. Reed also wrote asking Clement that Page's request be granted, but Clement declined to grant the request. Soon thereafter Page secured employment with Liberty Life Insurance Company at Chester and remained in that company's service until the date of his resignation as appears below.

About December 1, 1937, Page, while in Charlotte visiting relatives, had a talk with Reed and expressed a desire to be back with the Pilot. Reed assured him that he (Reed)

would like to have him back with the company and that he would do what he could to get him back. After several other contacts between Page and Reed, Page at the suggestion of Reed wrote to Clement asking for an interview with him at an early date. As a result of that request, Clement, Reed and Page met at the Selwyn Hotel, at Charlotte, and after a conference among them Page was offered the position of assistant manager at Spartanburg. Page asked for time to think over the offer and a day or two thereafter wrote Clement declining same.

Late in April, 1938, Page again called on Reed in Charlotte and sought his assistance in getting back with the Pilot and Reed suggested that Page write Clement personally asking for a position with the company. Page did that, and on April 30th received from Clement this reply : "I am in receipt of your letter regarding your conversation with Mr. Reed last Sunday. It may be that sometime in the near future some sort of proposition, satisfactory to you and the Company, may be worked out."

On May 4th, Page called Reed by telephone at Charlotte and stated that he had received a letter from Clement, in which Clement stated that he had a proposition for him (Page) down in Chester—that something had been worked out for him there. Reed immediately attempted to get in touch with Clement by telephone to confirm Page's statement, but found that Clement had gone to Norfolk, Virginia, for several days. Reed then called Cook at Chester and requested that he contact Page and ascertain whether or not the position of assistant manager at Chester would be satisfactory to him. Cook did as requested and found that Page would accept such a position. Both Reed and Cook then wrote Clement asking that the position of assistant manager at Chester be given Page. Page resigned his position with the Liberty Life Insurance Company on May 9th, before Clement had been heard from. A day or two thereafter Reed received a letter from Clement stating that he could not place Page at the Chester office. Both Reed and Cook, a few days

later, went to Greensboro and tried to prevail upon Clement to give Page work at Chester but failed in their efforts. They then went to see Mr. Greene, the president of the company, in Page's behalf, but failed there also. When the failure of their efforts was reported to Page, he repaired to his lawyer's office and in due course this action was brought.

The complaint alleges that Clement, Reed and Cook, acting in concert and on behalf of Pilot Life Insurance Company, conspired to get rid of him as a competitor of their company; that by their deceitful acts and conduct he was led to believe that he would be given employment with the Pilot Life Insurance Company, thereby causing him to resign his position with the Liberty Life Insurance Company and to be thrown out of employment; and that on account of such fraud and deceit he had been damaged in the sum of $31,-500.00.

The answer of the defendants denied all charges of conspiracy, fraud and deceit on the part of Pilot Life Insurance Company and its agents and representatives as alleged in the complaint.

The case came on for trial before Judge Featherstone and a jury. At the close of plaintiff't testimony, Judge Featherstone on motion of defendants ordered a non-suit. On appeal from that order this Court by its decision, reported in 192 S. C., 59, 5 S. E. (2d), 454, 125 A. L. R., 872, remanded the case for a new trial for the reason that the evidence at that trial was such as to require the case to be submitted to the jury.

The case came on for trial the second time before Judge Dennis and a jury. At the close of all testimony for both plaintiff and defendants, a motion was made for a directed verdict in favor of defendants upon these grounds:

"1. That, considering all of the testimony, the evidence is insufficient to establish the allegations of the complaint.

"2. That the evidence shows that the plaintiff's alleged injury and damage, if any, were brought about by his own

acts, and not as the result of deception practiced upon him by the defendants.

. "3. That the evidence fails to establish the existence of any fraudulent conspiracy on the part of the defendants.

"4. That the evidence shows that D. W. Reed and S. F. Cook, in their negotiations with the plaintiff, were acting in good faith and without fraudulent intent.

"5. That it affirmatively appears from the evidence, that the plaintiff's alleged injury or damage, if any, was due to the undisputed and admitted fact that the plaintiff misrepresented to D. W. Reed the purport and effect of the letter of W. B. Clement to the plaintiff, dated the 30th, day of April, 1938, which reads as follows: 'Dear Mr. Page: I am in receipt of your letter regarding your conversation with Mr. Reed, last Sunday. It may be that some time in the near future some sort of proposition satisfactory to you and the company may be worked out. With kind personal regards and best wishes, yours very truly, W. B. Clement.' "

The motion for a directed verdict was refused and the case submitted to the jury, resulting in a verdict in favor of plaintiff for both actual and punitive damages amounting in the aggregate to the sum of $14,000.00. Defendants' motion for a new trial was refused. From judgment entered on said verdict defendants appealed to this Court upon numerous exceptions. A number of the exceptions charge error on the part of the presiding Judge in not granting defendants' motion for a directed verdict upon the grounds stated above.

Respondent takes the position that this Court having held on the former appeal that the case should have been submitted to the jury, the presiding Judge at the second trial was bound to submit the case to the jury then. That position is untenable. In the first place, respondent at the second trial was forced to admit that his testimony on a most vital point at the former trial was untrue. We quote from the record:

"Q. (Hands witness paper) : Is this the letter you received from Mr. Clement, in reply to your letter? A. Yes, sir, I think it is.

"Q. Dated April 30th. Now, you had asked his kind consideration, and so on, and he wrote you this way: 'Dear Mr. Page : I am in receipt of your letter regarding your conversation with Mr. Reed, last Sunday. It may be that some time in the near future some sort of proposition satisfactory to you and the Company may be worked out.' He didn't offer you anything in that letter—does he? I say, he don't offer you anything in that letter, does he? A. No, sir; he didn't say anything definite in that letter.

"Q. It is merely a courteous letter saying that some time he might give you a job— A. In answer of my letter—

"Q. No talk about putting you here in Chester in here? A. I think so; I think he says, 'down in your locality,' doesn't it?

"Q. No, sir; he says, 'some time in the near future, some kind of proposition may be worked out.'

"Mr. Hemphill: What about satisfactory to you'? Read the letter.

"Q. 'Satisfactory to you, the proposition may be worked out'; but there is nothing about putting you here in Chester, is there? Now, what was the next contact you had? A. The next contact I had following that letter, was on May—

'Q. Was a phone conversation with Mr. Reed, wasn't it? A. I phoned; that is correct, yes, sir.

"Q. Did he get in touch with you or you with him? A. I got in touch with him, because he told me to write Mr. Clement a letter.

"Q. And Mr. Clement had replied? A. And then I called him up and told him I had a letter from Mr. Clement.

"Q. You called him up, and what did you say when you called him up? A. I told him I had a letter from Mr. Clement. And he said, 'Yes, we have been discussing you' and he said, 'I want to see you, and I will see you soon; I will let you hear from me in a few days.'

"Q. Is that what he said, and is that what you said? A. To the best of my knowledge, yes, sir.

"Q. Is that what you testified at the former trial of this case? A. I think so.

"Q. Did you testify this: 'I called Mr. Reed at 9:04 p. m. and told him I had a letter from Mr. Clement stating they had a proposition for me in Chester.' A. That is correct.

"Q. 'And he stated'—that is, Clement—'that they would see me in a few days; that he had worked out something for me down in Chester.' That is what you stated the conversation was. A. That is practically the same thing.

"Q. Is that what you are testifying about? A. That is practically the same thing.

"Q. Now, Mr. Page, I want you to read that letter of Mr. Clement's again; I am going to read, now, what you testified he said in that letter; and I want you to point out to me where it is in the letter. Now, here is your testimony: 'I called Mr. Reed at 9:04 p. m. and told him I had a letter from Mr. Clement stating that he had a proposition for me in Chester.' Find that in there. A. They understood that it didn't suit me to leave Chester.

"Q. Now, I am asking you to find what you told Mr. Reed Clement had written you? A. It is mighty hard—

"The Court: Just answer his question. A. It is not in the letter.

"Q. 'And they said they would see me in a few days.' Find that in there? A. No, sir; it is not here.

"Q. 'That he had worked something out for me down in Chester.' Find that in that letter. A. I don't see that in this letter.

"Q. It is not in that letter? A. No, sir."

Furthermore, at the second trial Clement, Reed, Cook and several others offered testimony explaining all of the transactions first above set forth and produced letters and other documentary evidence that have a very material bearing on the issues involved in the case.

The testimony covers more than three hundred printed pages and has been read and studied with the utmost care. We find no evidence whatsoever to the effect that Clement or Reed or Cook deceived or misled Page in any way, or that they attempted or purposed to do so. Clement befriended Page immediately after his suspension at Chester by permitting him to go to Spartanburg as assistant manager of that office thereby relieving him of certain embarrassment at home and giving him time to secure other employment. Clement again several months later showed his friendship by offering Page the position of regular assistant manager at Spartanburg. Clement never at any time promised or consented to place Page again at Chester, the scene of his default. Reed was at all times friendly with Page and gave him every assistance he could in his efforts to get back with the Pilot Life Insurance Company. As stated above, Reed and Cook, after Clement had positively refused to place Page again at Chester, went to Greensboro to intercede with Clement in Page's behalf, and failing there went to see the president of the company in behalf of their friend. The same thing must be said of Cook. The testimony not only failed to show that these men misled or deceived Page in any way or attempted or purposed to do so, but it shows positively and affirmatively that the contrary is true.

Respondent testified that Cook came to him on May 5th, and informed him that he (Cook) had talked with Reed and that Reed said that he and Clement would put him (Page) on the staff at Chester, and that it was on the strength of that assurance that he resigned his position with the Liberty Life Insurance Company. Respondent makes his entire case to hinge on that promise of employment through Cook; and it is right there that his case structure falls to pieces and to the ground. Whatever Cook told him on that occasion was the direct result of the false and misleading statements made by Page to Reed on May 4th, with respect to the contents

of the letter which Page had received from Clement on April 30th.

It is not necessary to review the testimony further. The motion for a directed verdict in favor of the defendants should have been granted.

The judgment appealed from is reversed and the case remanded to the Court of Common Pleas for Chester County with instructions to the Clerk thereof to enter judgment in favor of the defendants.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.