15378

GREEN v. INDUSTRIAL LIFE & HEALTH INS. CO. *ET AL.*

(18 S. E. (2d), 873)

June, 1941.

*Messrs. Tobias & Turner,* of Columbia, and *Mr. Sheppard K. Nash,* of Sumter, for appellant,

*Mr. A. S. Merrimon,* and *Mr. L. D. Jennings,* both of Sumter, for respondent,

February 24, 1942.

The opinion of the Court was delivered by CIRCUIT JUDGE G. DEWEY OXNER, ACTING ASSOCIATE JUSTICE.

This action was instituted in the Court of Common Pleas for Sumter County by Jack T. Green, respondent, against the Industrial Life & Health Insurance Company, appellant, and one H. Q. Jones for the purpose of recovering damages against both in the sum of $25,000.00. Within due time, appellant filed a petition and bond for removal of the cause

to the United States District Court on the ground of separable controversy and diversity of citizenship. Respondent and Jones are residents of this State. Appellant is a non-resident corporation, organized and existing under the laws of the State of Georgia. The Circuit Judge refused appellant's motion for an order transferring the cause to the United States District Court, from which order this appeal is taken.

There are four exceptions, but there is only one question involved, namely: Does the complaint present a separable controversy entitling the non-resident defendant to remove the cause to the United States District Court?

Appellant, while not undertaking to construe the complaint, urges that it could only be construed as an action either for conspiracy or for breach of contract with fraudulent intent. On either theory appellant contends a separable controversy is presented. Respondent contends that neither of these constructions is correct and that the only cause of action stated is one for fraud and deceit. The learned Circuit Judge passed a short, formal order in which he did not undertake to construe the complaint.

To determine whether a separable controversy is presented, we must look to the allegations of the complaint. We shall refer to the parties as they appeared in the Court below and, for the sake of brevity, to the appellant, Industrial Life & Health Insurance Company, as "Insurance Company".

In analyzing the complaint, Paragraphs One to Five, inclusive, will be grouped together.

In these paragraphs it is alleged that the insurance company is engaged in selling industrial, life, health and accident insurance contracts in Sumter County, State of South Carolina, having as District Superintendent H. Q. Jones, a resident of said county and State; that for a number of years plaintiff had been employed by the insurance company as a soliciting agent in Sumter County, during which period, by reason of his long experience, industry and ability, he had built up a large business, splendid good will and was

earning in commissions around $55.00 per week; and that under the terms of this employment either plaintiff or the company had a right to terminate same at will.

Plaintiff further alleges that, under a group policy carried by the insurance company with the Aetna Life Insurance Company, his life was insured for $4,000.00 and that he was also insured against accident in the same company for a like amount, which policies contained a provision that the insurance would cease upon termination of plaintiff's employment with the insurance company; that the premiums on these two policies, aggregating $3.60 per month, were collected by his employer and by it remitted to the Aetna Life Insurance Company; and that plaintiff also had a small health insurance policy with his employer, the insurance company.

It is further alleged in these paragraphs that the defendants, prompted by a desire to take over plaintiff's business, terminate his employment, and employ in his stead a brother of defendant Jones, and to avoid plaintiff going in business in competition with defendants, on June 24, 1940, made the following proposal to the plaintiff: If the plaintiff would retire from the insurance business and not reenter same at any time in the future, the insurance company would pay to the plaintiff for the remainder of his life a pension of $15.00 per week, the first payment to commence the following week. As a further consideration, the insurance company would agree, upon payment to it weekly of the premiums aggregating $3.60, to keep in force his policies with the Aetna Life Insurance Company under an arrangement which it represented it had with the Aetna. It is further alleged that plaintiff accepted said proposal and entered into an agreement accordingly.

In Paragraph Six it is alleged that immediately upon making said agreement, plaintiff, in accordance with its terms, retired from the insurance business, turned over to the insurance company the business which he had built up, and assisted it in every way he could to the end that his retirement

would not impair the valuable business and good will which the insurance company was acquiring.

Plaintiff, in Paragraph Seven, describes the nature of industrial insurance and points out that it is such as to require unbroken activity of the soliciting agent and renders necessary constant touch on his part with his customers. It is further pointed out that if this contact is lost for even a short period, it is difficult for such an agent to reenter the business and regain the lost patronage.

Paragraph Eight of the complaint is as follows: "That being well aware of the foregoing facts, and having gotten the plaintiff out of business and having secured the business built up by the plaintiff, together with its good will and his clients and customers, and well knowing that after the lapse of a short time the plaintiff could not offer the defendants any material competition even if he should undertake to reenter business, the defendants conspired together and willfully, wantonly and unlawfully formed the deliberate, wicked, wrongful and unlawful design and purpose, to fraudulently break the said agreement entered into by the plaintiff with the said Industrial Life and Health Insurance Company, with the intent to deprive and cheat and defraud the plaintiff of the rights and benefits to which he was entitled under the said agreement, and the different acts and things done and performed by the said defendants, and each of them, as hereinafter alleged, were all steps in the same design and conspiracy in which both of the said defendants participated and were all done and performed for the common purpose aforesaid."

In Paragraph Nine it is alleged that the weekly pension of $15.00 per week under the terms of said agreement was paid to plaintiff by the insurance company for a period of seven months, the last such weekly payment having been made on February 1, 1941, and that during February, 1941, plaintiff was taken ill and became entitled to $60.00 per month under his health policy with his former employer, the insurance company, for which claim was made. It is further alleged

that thereupon defendant Jones, "pursuant to and in furtherance of and as a part of the said conspiracy and design and with the purpose and intention aforestated to break plaintiff's said agreement with the said Industrial Life and Health Insurance Company and to cheat and defraud the plaintiff of his rights and benefits thereunder as aforesaid, and contriving to find an excuse and pretext so to do," made the following false and fraudulent representations with the acquiescence and at the direction of the insurance company: (1) That plaintiff's claim for such sick benefit "conflicted with and vitiated" the agreement with the insurance company made on June 24, 1940, and that "said agreement and plaintiff's rights thereunder were thereby ended and terminated." (2) That plaintiff "had been on leave from his duties during the time that the said weekly payments were made to him and up to the time they were stopped, the defendants thus denying the making of said agreement." It is then alleged that plaintiff had never requested or been granted any leave of absence, nor was there ever any agreement that he should be paid during a leave of absence; and that although making said false contentions, the insurance company "did not offer to reinstate the plaintiff in his position after the termination of the claimed leave of absence." It is further alleged that the insurance company, participating in said fraudulent contentions, discontinued making the weekly pension payment of $15.00 per week and had made none since February 1, 1941.

Paragraph Ten is as follows: "The plaintiff further alleges that pursuant to the said conspiracy and as a part thereof and for the purpose of carrying out their said wrongful and wicked and unlawful plan and design, the said defendants, scheming and conniving together for their joint and mutual benefit in all of their actings and doings as herein alleged, falsely and fraudulently pretended and represented that the plaintiff's life and accident insurance was being kept in force by plaintiff's payment of the monthly premiums thereon, and the plaintiff, relying upon the said false and fraudulent rep-

resentations, continued to pay to the said defendant, Jones, who with the consent and by the direction of the said Industrial Life and Health Insurance Company, accepted and received the same, the said monthly premiums of $3.60 per month on the said insurance each month as the said premiums became due, the last of said premiums paid by the plaintiff having become due and having been paid on the 3rd day of March, 1941. That the defendants well knew that their said representations were false and that the said Industrial Life and Health Insurance Company had not caused plaintiff's said insurance to be continued in force in accordance with its said agreement, and the said false and fraudulent representations were made by the defendants to induce the continued payment of the said premiums which the said defendants, instead of using to keep plaintiff's said insurance in force, converted to their own use, thereby defrauding the plaintiff out of the said premiums paid by him, for which he received nothing of value whatsoever, and leaving the plaintiff without the protection of the said insurance to which he has heretofore been and is now entitled."

Paragraph Eleven, the last paragraph of the complaint, is as follows: "That the said defendants have by the means and in the manner aforesaid executed the said conspiracy and accomplished their said wrongful and unlawful design and have willfully and wantonly and fraudulently and unlawfully breached the said agreement made by the plaintiff with the said defendant, Industrial Life and Health Insurance Company, and have deprived and cheated and defrauded the plaintiff of the rights and benefits to which he is entitled thereunder, all as hereinbefore alleged, to the damage of the plaintiff in the sum of $25,000.00."

We think the complaint states a cause of action for alleged fraudulent breach of contract. The principal allegation in paragraphs one to five, inclusive, is the contract made between the plaintiff and the appellant on June 24, 1940. The remaining allegations in these paragraphs are preliminary or introductory in nature. Paragraphs Six and

Seven have no effect on the inquiry under consideration. It will be observed that up to this point no fraudulent conduct is alleged. A breach of said contract is alleged in Paragraphs Eight and Nine. It is true that there is also alleged in these two paragraphs the motive which induced the breach and that such was done for the purpose of cheating and defrauding the plaintiff. Also, certain fraudulent representations are alleged to have accompanied the breach. But these allegations may be regarded as bearing on the issue as to whether such breach was accompanied by fraudulent acts. Passing over Paragraph Ten for the present, in Paragraph Eleven plaintiff alleges that defendants have "breached the said agreement" and "defrauded the plaintiff of the rights and benefits to which he is entitled thereunder" to his damage.

If Paragraph Ten is eliminated from consideration, it is clear that a cause of action for alleged fraudulent breach of contract is stated. While the motive prompting the breach and alleged acts accompanying same are characterized as "wicked", "unlawful", "fraudulent",. etc., words sounding in tort, "recriminatory words sounding in tort, however numerous or however oft-repeated, cannot change the structural essence of a cause of action." *Genuine Panama Hat Works v. Webb,* D. C., 36 F. (2d), 265, 267.

In the case of *Shaw v. Great Atlantic & Pacific Tea Co.,* 189 S. C., 437, 1 S. E. (2d), 499, 500, the Court said: "Where a complaint states a cause of action in contract, and it appears that this is the gravamen of the action, it has been held that the nature of the action as *ex contractu* is not affected or changed by the fact that there are also allegations in regard to tortious conduct on the part of the defendant, such as allegations in regard to negligence, or fraud, or conversion, which in such cases may be disregarded as surplusage."

If it is doubtful whether a cause of action is on contract or in tort, the doubt must be resolved in favor of the former. *Shaw v. Great Atlantic &. Pacific Tea*

*Co., supra; Lawson v. Metropolitan Life Insurance Co.,* 169 S. C., 540, 169 S. E., 430.

While a failure on the part of the appellant to keep ■ the Aetna policies in force as alleged in Paragraph Ten would constitute another breach of the contract set out in the complaint, it may be plausibly argued that this paragraph also states a cause of action in tort for fraud. Assuming, without so deciding, that it does, this would not have the effect of changing the cause of action otherwise stated for alleged fraudulent breach of contract.

Having reached the conclusion that a cause of action ■■ for alleged fraudulent breach of contract is stated, a separable controversy is presented wholly between plaintiff and appellant to which defendant Jones is not a necessary party. He was not a party to the contract. Where an agent enters into a contract for a known principle, while acting within his authority as such agent, he is not personally liable on the resultant contract. The liability, if any, for a breach of such contract is that of the principal alone. *Goodale v. Page,* 92 S. C., 413, 75 S. E., 700.

The decision of this Court in the case of *Davis & Clanton v. C. I. T. Corporation,* 190 S. C., 151, 2 S. E. (2d), 382, 383, supports the foregoing views. The complaint in that case alleged a contract between plaintiff and the non-resident defendant corporation whereby said corporation agreed to supply plaintiff with all credit necessary to the proper conduct of his business, provided plaintiff executed to it a mortgage on certain property.

In construing the complaint, the Court said: "The gravamen of plaintiff's complaint is that instead of furnishing and supplying the needed credit the defendant corporation breached its said contract and refused to furnish credit as promised, but on the contrary, acting through its agents, Gause and Stryker, in furtherance of a fraudulent scheme and with a fraudulent intention, committed acts, alleged to be fraudulent and malicious, resulting in the destruction of plaintiff's business, the depreciation of its assets, and the

wiping out of its credit, to its damage in the sum of $100,-000.00."

Although plaintiff insisted in that case that the cause of action was one in tort for fraud and deceit only and "that the 'so-called contract' was alleged only to give the background of the action," the Court held that the alleged cause of action was one for fraudulent breach of contract. In reaching the conclusion that a separable controversy was presented, the Court said: "The individual defendants in the case at bar were of course not parties to the alleged contract; and if this action had been brought solely for actual damages for an alleged breach of such contract, then the individual defendants would have been neither necessary nor proper parties. Since in the instant cause actual damages would be recoverable from the defendant corporation alone upon proof of the alleged contract and its breach, then it must logically follow that there is a separable controversy; that is to say, one existing solely between the plaintiff corporation and the defendant corporation, even if there is also another controversy alleged in the complaint based upon the joint and concurrent fraudulent and malicious acts of all the defendants."

The Court of Appeals for the Eighth Circuit, in the case of *Hamilton v. Empire Gas & Fuel Co.*, 297 F., 422, held that there was a separable controversy under circumstances very similar to those here presented.

Plaintiff contends that the gravamen of this action is the alleged wrongful and fraudulent acts of defendants, done for the purpose of eliminating him from the insurance business as a competitor, by reason of which he was induced to enter into the agreement mentioned in the complaint and retire from the insurance business. It is urged that such would constitute the basis of an action for fraud and deceit within the principles laid down in the case of *Page v. Pilot Life Insurance Company*, 192 S. C., 59, 5 S. E. (2d), 454, 125 A. L. R., 872. The complaint in the *Page case* alleged that plaintiff was induced to resign and give up steady employ-

ment by fraudulent scheming and misrepresentations on the part of the defendant life insurance company, through its agents, pursuant to a conspiracy to eliminate him as a competitor in the insurance field and that the representations and promises were made to him with no intention of carrying them out. The Court held that a cause of action for fraud and deceit was stated. It will be observed, however, that there fraud was alleged in the inception of the contract in that it was made with no intention on the part of defendants to carry out its terms.

In the instant case, the complaint does not allege that there was any fraud in connection with the making of the contract. On the contrary, according to the allegations of Paragraph Eight, the alleged conspiracy to defraud and injure the plaintiff took place after the contract was made.

Appellant and respondent appear to be in accord that no joint cause of action for conspiracy is stated for the reason that "it is incomprehensible that a single agent may, as the representative of his principal, conspire with himself as an individual, so that he and the principal should be convicted of a conspiracy." *Goble v. American Ry. Express Co.*, 124 S. C., 19, 115 S. E., 900, 903; *Hospital Care Corporation v. Commercial Casualty Insurance Co.*, 194 S. C., 370, 9 S. E. (2d), 796.

If the complaint be construed as containing a joint cause of action against both defendants in tort for alleged fraud and deceit in addition to the cause of action against the appellant for alleged fraudulent breach of contract, such would not affect appellant's right of removal.

We find the following statement in the case of *Johnson v. Great Atlantic & Pacific Tea Co.*, D. C. S. C., 25 F. Supp., 449, 450: "It is likewise well settled in this state that the mere jumbling of several causes of action in one complaint without separately stating them would not affect the question of removability, if there is a separate controversy stated against the non-resident defendant."

In the case of *C. I. T. Corporation v. Ambrose,* D. C. S. C., 36 F. Supp., 311, 314, the Court said: "A suit which is not removable to federal court when considered as a whole, because not wholly between citizens of different states, may have within it a separable controversy that is wholly between citizens of different states, and the defendants in such separable controversy can exercise the right of removal, in which event the entire suit will be removed."

Honorable H. H. Watkins, United States District Judge for the Western District of South Carolina, in the case of *Moseley v. Life Insurance Co. et al.** (filed May 15, 1929), in passing upon a similar situation, said: "Furthermore, if the complaint states a cause of action against the defendant corporation on a contract and a joint cause of action against defendants in tort, certainly the first is a separable controversy and is removable by the defendant company from the state to the Federal Court and the joinder of unnecessary parties cannot defeat the removal * * * The removal of this separable controversy carries the whole case into the Federal Court."

The following cases from other jurisdictions are in accord with the foregoing decisions of the United States District Courts of this State: *Eber Bros. Wine & Liquor Corporation v. Firemen's Insurance Co.,* D. C., 29 F. Supp., 772; *Mecom v. Fitzsimmons Drilling Co.,* 10 Cir., 47 F. (2d), 28; *Strother v. Union Pacific Railway Co.,* D. C., 220 F., 731; *Oblak v. Armour & Co.,* D. C., 1 F. R. D., 648.

The complaint in the case of *Jennings v. Southern Railway Co.,* 156 S. C., 92, 152 S. E., 821, contained a cause of action for libel against the non-resident defendant alone and a joint cause of action for libel against said defendant and the resident defendants. While the question is not discussed, both causes of action appear to have been removed to the Federal Court.

We express no opinion as to the removability of the entire case where there are joined in a complaint two entirely

---

* No opinion for publication.

disconnected causes of action, separately stated, having neither a common subject-matter nor any other relation except the plaintiff and defendants are the same, and the causes of action are such as are permitted to be joined in the same complaint, one of which presents a removable case and the other does not. See *Hammer v. British Type Investors,* D. C., 15 F. Supp., 497. No such situation is hereby presented.

We conclude that the complaint states a cause of action for alleged fraudulent breach of contract presenting a separable controversy as to the appellant, and that the case is removable even though the complaint be construed as also including a joint cause of action in tort against both defendants, in which event the entire case would be removed to the United States District Court.

The appellant's motion to remove should have been granted and the judgment of the lower Court refusing same is reversed.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES concur.