**WIENER KING SYSTEMS, INC., Plaintiff,**

v.

**Thomas C. BROOKS, d/b/a Wiener King, Defendant.**

**No. C–C–85–445–M.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Feb. 20, 1986.

844

Melvin L. Watt, Jonathan Wallas and John T. Nockleby, Ferguson, Watt, Wallas & Adkins, Charlotte, N.C., for plaintiff.

Bentford E. Martin, Cannon, Kline & Blair, Charlotte, N.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McMILLAN, District Judge.

The defendant has moved to dismiss for lack of personal jurisdiction. A hearing was held on the motion on December 16, 1985. By order filed December 19, 1985, the defendant's motion to dismiss was denied. Since additional litigation is anticipated between Wiener King Systems, Inc., and current franchisees using the Wiener King trademark, it appears appropriate to enter findings of fact and conclusions of law setting forth the reasons why the defendant's motion to dismiss is denied.

### FINDINGS OF FACT

1. Plaintiff, Wiener King Systems, Inc. is incorporated under the laws of Pennsylvania. It offers franchises to restaurants to operate under the trade name "Wiener King."

2. Wiener King *Corporation*, previously incorporated in North Carolina, no longer exists.

3. Plaintiff is the successor in interest of Wiener King Corporation, having been assigned the assets of Wiener King Corporation by Richard E. Dennis who purchased Wiener King Corporation's assets, including the franchise agreement at issue herein, from Wiener King Corporation in a sale approved on or about March 16, 1983, by the United States Bankruptcy Court for the Western District of North Carolina (Dennis Aff. ¶ 2).

4. Defendant, Thomas C. Brooks, is a resident of Alexandria, Louisiana. Defendant Brooks operates a "Wiener King" franchise restaurant in Alexandria, Louisiana.

5. At some time prior to August, 1976, defendant Brooks visited the headquarters (and only office) of Wiener King Corporation in Charlotte, North Carolina, to discuss Brooks' interest in a franchise arrangement with Wiener King Corporation (Brooks Aff. ¶ 5). The parties apparently reached tentative agreement, and Brooks left Charlotte with a proposed franchise agreement to discuss with his attorney. Thereafter, defendant signed and mailed the franchise agreement to Charlotte and, on August 10, 1976, the Wiener King Corporation Franchise Agreement was executed by Wiener King Corporation in Charlotte (Agreement, ¶ 4.10). A copy of the franchise agreement is attached to the complaint.

6. The franchise agreement established a detailed relationship between Wiener King Corporation and defendant with Wiener King Corporation's Charlotte office serving as the location from which goods and services were made available to defendant and to which defendant corresponded when seeking assistance or paying fees. Specifically, the franchise agreement stated that:

(a) It was made in Charlotte, North Carolina and that Wiener King Corporation's principal office was in Charlotte (p. 1).

(b) The franchisee recognized the special good will that had been developed in the name "Wiener King" as well as the "advantages of the skill and knowhow of franchisor" (p. 1).

(c) The franchisor undertook certain obligations including approval of outlet sites, approval of equipment and floor

plans, making available goods and equipment to the defendant, training of defendant's personnel, conducting inspections and providing a field consultant to work with the defendant, assistance in advertising campaigns and the right to determine standards of quality, service, production, merchandising and advertisement of all products sold by franchisee (section two of the agreement).

(d) The defendant, as franchisee, obligated himself to purchase certain products from the franchisor, to meet various established standards and rules, to maintain insurance at certain levels, to maintain certain books and records and to pay certain advertising and franchise fees (section three of the agreement).

(e) The franchise had a ten-year life, and the obligations of the franchisee to make its fee payments and otherwise to deal with the franchisor in North Carolina were to continue throughout the life of the contract (agreement, ¶ 1.4).

(f) The franchise agreement stated: "This contract comes into existence upon execution and acceptance by Franchisor in the State of North Carolina, and *its terms and provisions shall be construed in accordance with and governed by the laws of the State of North Carolina* " (emphasis added) (agreement, ¶ 4.10).

(g) The franchise agreement acknowledged that there would be a continuing relationship between franchisor and franchisee to insure that all who displayed the "Wiener King" name utilized uniform procedures, techniques and printed matter (p. 1).

(h) The franchise agreement stated that it would "bind and inure to the benefit of the parties hereto, their heirs, personal representatives, successors and assigns" (agreement, ¶ 4.15).

7. The relationship between Wiener King Corporation and the defendant continued for a number of years. The company provided various goods and services to the defendant. Such goods and services were provided to the defendant from Wiener King Corporation's Charlotte, North Carolina, office. Defendant corresponded regularly with Wiener King Corporation in Charlotte, and sent to Charlotte the pertinent franchise and other fees owed to Wiener King Corporation under the franchise agreement. Such fees were sent on a monthly basis. Thus, the franchise agreement contemplated (and this in fact occurred) that defendant would, on a monthly basis, send information and money to Wiener King Corporation in Charlotte. The franchisor maintained no satellite offices and all the dealings of the parties were to and from Charlotte (Dennis Aff. ¶¶ 4, 5 and 7).

8. In addition to the continuing business relationship between the franchisor's Charlotte office and the defendant's Louisiana restaurant, the defendant and his wife attended a training session in Charlotte, North Carolina, conducted for at least four days by Wiener King Corporation's director of training in about March, 1977 (Boone Aff.). The defendant also became a member of the Wiener King Corporation's Franchise Advisory Council. On several occasions, Wiener King Corporation's Charlotte-based employees traveled to Louisiana to assist defendant with his operations (Dennis Aff.).

9. In 1978, Wiener King Corporation filed a bankruptcy petition. During the pendency of the bankruptcy action, defendant continued to send payments of the pertinent fees required in the franchise agreement to the bankruptcy receiver, James Wall, in Charlotte, North Carolina.

10. On March 16, 1983, Richard E. Dennis purchased the assets of Wiener King Corporation, including the franchise agreement at issue in this litigation (Dennis Aff.Ex. A). On the same day, Dennis reassigned to plaintiff his rights to all franchise agreements (Dennis Aff.).

11. At the time Wiener King Systems became the successor in interest to Wiener King Corporation, there were only about twenty franchises still in existence in the Wiener King system. Some of these fran-

chises have since gone out of business (Dennis Aff.Ex. A).

12. The defendant continued to pay its franchise fees to Wiener King Systems for a number of months after March, 1983. About August 1983, defendant ceased to pay his franchise fees but continued to operate as a Wiener King restaurant utilizing the name and trademarks then owned by plaintiff. Wiener King Systems has no office in North Carolina; its only present office is in Pennsylvania.

13. From the terms of the franchise agreement and the subsequent actions taken both by franchisor and franchisee, the defendant purposefully directed his activities to North Carolina residents. Defendant had fair notice that an action for alleged breach of the franchise agreement might be brought in North Carolina. By signing and executing the franchise agreement, as well as by his subsequent actions, defendant established a voluntary substantial connection with North Carolina.

### CONCLUSIONS OF LAW

1. This is a diversity case. The court has jurisdiction over the subject matter of the action.

2. In order for the plaintiff to establish personal jurisdiction over defendant, plaintiff must demonstrate (a) that the franchise agreement between Wiener King Corporation and defendant and the other pertinent contacts between franchisor and franchisee are such that courts of the State of North Carolina would assume jurisdiction over defendant under North Carolina's "long arm" statute and (b) that there had been contacts between defendant and the State of North Carolina sufficient that North Carolina's exercise of personal jurisdiction over defendant would not offend due process.

■ 3. In this case, of course, Wiener King Systems is the assignee of the interests of Wiener King Corporation. As the assignee of the interests of Wiener King Corporation, plaintiff assumes the assignor's place in the contract and can assert those North Carolina contacts that defend-

ant had with Wiener King Corporation to establish North Carolina's jurisdiction over the person of the defendant. *See generally*, Strong's North Carolina Index 3d, Assignments, ¶¶ 4 and 4.1.

■ 4. Under N.C.G.S. § 21–57, all actions must be brought by the real party in interest. Plaintiff as assignee of the franchise agreement is the real party in interest here. *Morton v. Thornton*, 259 N.C. 697, 131 S.E.2d 378 (1963). Plaintiff has acquired the right to enforce the contract against the defendant. *Atlantic and N.C.R. Co. v. Atlantic and N.C. Co.*, 147 N.C. 368, 61 S.E. 185, 191 (1908). Plaintiff, of course, takes on the contract *cum onere*, with its burdens as well as its benefits. The defendant can assert any defenses it may have against the assignor.

5. The State of North Carolina has determined that its courts should be available for certain suits. Given the nature of defendant's contacts with the state, North Carolina's interest is the same whether the action is brought by the assignor (Wiener King Corporation) or by plaintiff assignee. Under North Carolina law, the assignee "stands in the shoes" of the assignor for all purposes. If defendant had contacts with North Carolina sufficient that jurisdiction in North Carolina would be proper for Wiener King Corporation, defendant cannot complain if an action is brought in this state by the assignee (the plaintiff here).

■ 6. The North Carolina "long-arm" statute, N.C.G.S. 1–75.4, reads in pertinent part, as follows:

A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances:

(5) Local Services, Goods or Contracts.
—In any action which:

a. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be

performed in this State by the plaintiff; or

b. Arises out of services actually performed for the plaintiff by the defendant within this State, or services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant; or

c. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this State, or to ship from this State goods, documents of title, or other things of value; or

d. Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction; or

e. Relates to goods, documents of title, or other things of value received by the plaintiff in this State from the defendant through a carrier without regard to where delivery to the carrier occurred.

7. Cases arising under the North Carolina long arm statute indicate that the purpose of the statute is to assert *in personam* jurisdiction over non-resident defendants to the full extent permitted by the due process clause of the United States Constitution. *United Buying Group, Inc. v. Coleman*, 296 N.C. 510, 251 S.E.2d 610 (1979); *First Citizens Bank and Trust Company v. McDaniel*, 18 N.C.App. 644, 197 S.E.2d 556 (1973); *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977); *Pope v. Pope*, 38 N.C. App. 328, 248 S.E.2d 260 (1978). The statute is to be liberally construed in favor of finding personal jurisdiction, subject to the mandates of the due process clause.

8. Applying the pertinent North Carolina statute to the facts of this case, it is clear that North Carolina courts would assert jurisdiction over the franchise agreement at issue. The franchise agreement, by its terms and as performed by franchisor and franchisee, required that the defendant pay for services performed in North Carolina by the franchisor. These services included training, preparation and distribution of advertising and similar materials, and assistance by Wiener King Corporation personnel in the establishment and fine tuning of defendant's business. The franchise agreement specifically states that it comes into existence in North Carolina when executed by the franchisor and is to be governed by North Carolina law.

9. In *Harrelson Rubber Company v. Dixie Tire and Fuels*, 302 S.E.2d 919 (N.C. App.1983), the North Carolina Court of Appeals found that personal jurisdiction existed against an out-of-state defendant under N.C.G.S. § 1–75.4(5)(a) and (b) even though the uncontroverted evidence indicated that the defendant had never physically been in North Carolina and all of the defendant's business dealings with the plaintiff had been in the State of South Carolina. The *Harrelson* court held that (a) since the franchise agreement was executed in North Carolina; (b) since it became effective when executed by the plaintiff in North Carolina; (c) since the agreement expressly was to be governed by North Carolina law; and (d) since all services rendered by the plaintiff and all goods manufactured and shipped to the defendant came from North Carolina, there were sufficient contacts under the North Carolina statute and the United States Constitution to provide *in personam* jurisdiction over the defendant.

10. In this case, the franchise agreement specifically stated it was made and executed in North Carolina and was to be governed by North Carolina law. Moreover, the defendant not only agreed to pay for services to be performed in North Carolina by the franchisor under an ongoing ten-year contract, but such services in fact were provided. Further, the defendant personally appeared in North Carolina to take advantage of training provided pursuant to the franchise agreement. For all of these reasons, the court concludes that North Carolina courts would entertain jurisdiction over the defendant.

**848**

11. Even if the pertinent state statute provides a basis for *in personam* jurisdiction, the exercise of such jurisdiction cannot stand, of course, unless the defendant had sufficient minimum contacts with the foreign state to meet the mandates of the due process clause of the Fourteenth Amendment. Exactly what constitutes sufficient contacts for the purpose of due process has been the basis for frequent litigation at least since *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 955 (1945).

12. In the last term, the Supreme Court addressed the issue of minimum contacts in the franchise agreement milieu. In *Burger King Corporation v. Rudzewicz*, 471 U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court held that defendant Rudzewicz, who had entered into a franchise agreement similar to the one at issue here, had sufficient contacts with the State of Florida to allow that state to exercise personal jurisdiction over him even though he had *never* visited that state. The Court held that by entering into a franchise agreement and agreeing to a variety of continuing obligations which were due to the franchisor in Florida, the defendant had directed his activities sufficiently and purposefully to that forum, making him subject to suit there. *Id.*, 471 U.S. at ——, 105 S.Ct. at 2186, 85 L.Ed.2d at 545. Factors which the Supreme Court relied upon to find personal jurisdiction included the facts that the franchise agreement itself stated (a) that the contract would become effective when executed in Florida, (b) that it would be deemed made and entered into by the parties in the State of Florida; and (c) that it would be construed under Florida law. *Id.*, 471 U.S. at ——, 105 S.Ct. at 2187–90, 85 L.Ed.2d at 546–50. In addition, the Court found that defendant entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida, and Burger King imposed exacting regulations on defendant from its Florida office. These provisions provided a sufficient basis to meet the constitutional test.

13. Since the defendant's contacts with the State of North Carolina in this case are significantly greater than Mr. Rudzewicz's contacts with the State of Florida in the *Burger King* case, the court concludes that North Carolina can constitutionally exercise jurisdiction over defendant. There is no reason to treat the franchise agreement here differently than the one in *Burger King*. Both of the agreements are complex, multi-year contractual obligations. Both franchise agreements indicate that they would go into effect when signed in the home state of the plaintiff/franchisor; both indicate that the contracts were made in the franchisor's home state; both recite that the law of the franchisor's home state would apply in the event of any controversy; and both indicated that regulations will be imposed on the business by the home office of the plaintiff. Thus, from the outset, defendant Brooks, just like defendant Rudzewicz, was given fair notice when he entered into the franchise agreement and accepted the benefits of the agreement that he might be sued in North Carolina if dispute arose over the contract. The franchise agreement "envision(ed) continuing and wide-reaching contacts" with Wiener King in North Carolina. *See Burger King, supra,* 471 U.S. at ——, 105 S.Ct. at 2185, 85 L.Ed.2d at 545. The franchisor provided its name and trademarks, its expertise in the restaurant business, training, merchandise and equipment and a variety of other services and goods all emanating from its Charlotte, North Carolina, main office. Conversely, franchisee Brooks was required by the agreement to pay moneys to Wiener King Corporation in Charlotte and to provide copies of records to Wiener King's Charlotte-based operation in a number of particulars relating to the methods by which defendant's restaurant was to be operated. Not only were such obligations contained in the franchise agreement, but for a number of years the defendant had periodic contacts with Wiener King in Charlotte and sent the prescribed fees, etc., to the Charlotte office until Wiener King Corporation was purchased by Wiener King Systems, located in Pennsylvania.

*Compare Monroe Hardware Co. v. Robinson,* 621 F.Supp. 1166, 1169 (W.D.N.C.1985) (extensive and systematic business relationship involving repeated dealings in North Carolina made or should have made defendant aware that he would be subject to suit in this state).

14. Although, as *Burger King* makes clear, physical presence is not necessary to establish sufficient due process contacts, here defendant Brooks met with Wiener King corporation officials in Charlotte prior to August, 1976, to discuss his franchise, returned to Charlotte about March, 1977, for at least one and perhaps two weeks of Wiener King training, and may have also attended various conventions and franchise meetings thereafter in Charlotte. Brooks thus availed himself of Wiener King's Charlotte training facilities and personnel and had additional physical contacts with the forum state beyond those evident in the *Burger King* case.

15. The defendant contends, however, that since Wiener King Systems is the assignee of Wiener King Corporation and is a Pennsylvania corporation with no office in North Carolina that the State of North Carolina has lost its power to entertain litigation over the franchise agreement. Defendant asserts that after Wiener King Systems became the successor in interest to Wiener King Corporation, defendant's contacts have been with Wiener King Systems in Pennsylvania and that suit is thus constitutionally impermissible in North Carolina. Defendant's arguments are not persuasive. The pertinent inquiry is whether defendant's contacts with the State of *North Carolina* concerning *this contract* are sufficient to permit North Carolina courts to exercise jurisdiction over the defendant in a dispute *concerning this contract.* The court finds that such minimum contacts have been well established. North Carolina's power to adjudicate disputes with defendant over this contract did not disappear merely because the contract was purchased and assigned to a third party.

Moreover, jurisdiction, once established, did not evaporate simply because the franchisor/assignee moved its office out of North Carolina. Nor did North Carolina's power over defendant Brooks disappear merely because the contract has been assigned to Wiener King Systems.

16. North Carolina has an interest in seeing that its law is interpreted in North Carolina. There is a further interest in having any litigation over this franchise agreement and similar franchise agreements made with other franchisees being heard in one forum where consistent applications of North Carolina law may be expected. North Carolina courts, both state and federal, are in a better position than courts in other states to find and apply North Carolina law. It is thus in the public interest that this lawsuit and similar lawsuits be brought in North Carolina.

17. Weighing all the various factors, the court concludes that North Carolina is a fair and appropriate site for litigation over the particular franchise agreement and defendant's motion to dismiss should be denied.