**PROCESSING RESEARCH, INC., Plaintiff,**

v.

**Lee H. LARSON, Defendant.**

**Civ. A. 88–0364–A.**

United States District Court, E.D. Virginia.

May 11, 1988.

Ralph V. DeMartino, McLean, Va., Paul A. Fischer, Washington, D.C., for plaintiff.

Harold H. Dutton, Jr., Manassas, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This diversity contract, warranty and fraud action grows out of the sale of a used airplane by a Colorado individual to a Virginia corporation. The action is before the Court on defendant's Rule 12(b)(2), Fed. R.Civ.P., motion to dismiss for lack of personal jurisdiction and it tests the constitutional reach of Virginia's Long Arm Statute, Va. Code § 8.01–328.1 (1987).

### Facts

The essential jurisdictional facts are not in substantial dispute. Plaintiff, Processing Research, Inc. (PRI), a Virginia corporation, is engaged in the business of electronic systems design and analysis. In September, 1987, PRI decided to purchase an aircraft to fly company personnel to and from business meetings. To fill the bill, the aircraft had to be a pressurized, twin-engine model capable of flying at altitudes as high as 30,000 feet. PRI further concluded that a used aircraft would be suitable provided its condition permitted safe operation for a period of two to three years prior to requiring a major engine overhaul. The search for an appropriate machine led PRI'S president, Stewart, to the Volume 50, No. 32 issue of *Trade–A–Plane*, a nationally circulated periodical published thrice monthly. PRI's president was a subscriber. An advertisement on page 71 of this issue caught Stewart's eye. It stated, in whole,

> 1976 B60, 2800TT, NDH, SMOH L & R, 125 SPOH L & R, May annual, 135 certified. Collins Microline, dual transponder, Century IV FD with YD, phone, radar altimeter, RDR–150, 232 gallons

air, known ice, excellent paint and interior, trade or finance. Lee Larson, 303, 452–6661. s3

Attracted by this advertisement, Stewart called defendant in Colorado. Defendant Larson is an individual who conducts business in Colorado as an aircraft broker. This telephone call, initiated by Stewart, lasted almost two hours. PRI alleges that in this and subsequent calls (some initiated by Stewart and some by defendant) a number of misrepresentations were made by defendant concerning the advertised Beechcraft. In late September, defendant sent by mail to PRI in Virginia a packet of information concerning the aircraft. PRI contends this packet confirmed the oral misrepresentations made by defendant in the telephone calls.

PRI ultimately decided to purchase the Beechcraft and in early October, 1987, defendant sent Stewart a form contract by mail. The purchase price was $119,850. Stewart signed the contract on behalf of PRI and sent it back to defendant in Colorado along with a down payment check in the amount of $11,985. Defendant deposited the check in his bank in Colorado. Significantly, the contract PRI signed included the following provision:

> This contract shall be deemed to have been made and executed under and governed by the laws of the State of Colorado. It comprises the entire agreement pertaining to this purchase and no other agreement of any kind, written or verbal, exists in connection with this transaction.

During October, 1987, there were more telephone calls between defendant in Colorado and Stewart in Virginia. Defendant sought to assist PRI in obtaining financing from banks outside Virginia. These efforts failed to bear fruit. Ultimately, PRI obtained its own financing from Crestar Bank in Virginia. At Stewart's request, defendant provided Crestar with information by telephone concerning the aircraft.

In November, 1987, Stewart traveled to Colorado, tendered to defendant the balance due under the contract and both in-

spected [1] and took delivery of the aircraft, all in Colorado. PRI then had the aircraft flown to Virginia. Thereafter, PRI alleges it discovered facts about the aircraft, its equipment and its engines that were at sharp variance with the defendant's representations, on which plaintiff had relied in making the purchase. Hence this action followed.

Defendant, in his affidavit, avers that he owns no property or bank accounts in Virginia, that he has never appointed any agent for service of process in Virginia and that indeed, he has never physically been in Virginia (a lamentable admission). He also states that his only "contact with the State of Virginia has been in connection with this case, and has been limited to telephone calls with plaintiff in Virginia and forwarding of information requested by plaintiff." So far as he is aware, he has never sold an aircraft to any other resident of Virginia.

PRI asserts six causes of action in its Complaint: (1) breach of contract, (2) breach of express warranty, (3) breach of implied warranty of merchantability, (4) breach of implied warranty of fitness for a particular purpose, (5) fraud, and (6) innocent misrepresentation. Defendant, in addition to seeking dismissal on jurisdictional grounds, moved in the course of oral argument for a transfer to Colorado pursuant to 28 U.S.C. § 1404(a). In addition, transfer pursuant to Section 1406 was raised. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Porter v. Groat*, 840 F.2d 255 (4th Cir. 1988). The Court gave both parties leave to submit memoranda on the transfer issue, as well as additional material on personal jurisdiction.

### Analysis

Personal jurisdiction analysis is a two step process. First, each alleged cause of action must be measured for a fit against each alleged part of the Long Arm Statute, Va. Code § 8.01–328.1. If no fit is found, the inquiry is at an end: there is no personal jurisdiction. On the other hand, if any of the Long Arm provisions fit, a further inquiry must be made before jurisdiction can be sustained. This further inquiry is to ascertain whether the Long Arm's reach in that particular instance exceeds its constitutional grasp. *See International Shoe Co. v. Washington*, 326 U.S. 310, 311–313, 66 S.Ct. 154, 156–57, 90 L.Ed. 95 (1945); *Hanson v. Denckla*, 357 U.S. 235, 245–46, 78 S.Ct. 1228, 1235–36, 2 L.Ed.2d 1283 (1958); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 289–91, 100 S.Ct. 559, 563–64, 62 L.Ed.2d 490 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463–64, 105 S.Ct. 2174, 2177–78, 85 L.Ed.2d 528 (1985). When applied here, this two step process discloses that some portions of Virginia's Long Arm Statute reach these facts, but that this reach is beyond the statute's constitutional grasp.

 PRI relies on the first five sections of the Long Arm Statute. Va.Code § 8.01–328.1(A)(1)–(A)(5). The first three do not fit. As to the first, defendant cannot be said to be "[t]ransacting any business in this Commonwealth." A settled principle, to be sure, is that a single act may constitute transaction of business under Virginia's Long Arm, provided the action arose from that one transaction. *See Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 238 S.E.2d 800, 802 (1977); *Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 180 S.E.2d 664, 667 (1971). But this principle simply serves to underscore that it is the nature and quality of acts and not their number that determines whether transaction of business has occurred. It does not mean that *any* single act suffices. Indeed, it has been held that the shipment of goods alone into a state may not constitute transaction of busi-

---

**1.** Defendant in his affidavit asserts that the aircraft was inspected by PRI's representatives in Colorado "prior to completion of the transaction" and that it was delivered by defendant to these PRI representatives in Colorado. At the hearing, counsel for PRI disputed whether a full inspection was performed prior to delivery. It

was conceded, however, that PRI representatives made some sort of inspection of the aircraft in Colorado before accepting it and flying it to Virginia. There is no dispute that some inspection and the delivery took place in Colorado. Only the extent and nature of the inspection is disputed.

**122**

ness.[2] More to the point here, it has also been held that mere telephone conversations, telexes and letters negotiating a transaction do not suffice. *Unidyne Corp. v. Aerolineas Argentinas,* 590 F.Supp. 391, 396 (E.D.Va.1984). In *Unidyne,* plaintiff sued in part on an alleged settlement agreement and the court held that plaintiff failed to carry the burden of showing that the settlement negotiations via telephone and telex communications to Virginia amounted to transacting business in Virginia. *Id.* at 396. The same result must obtain here. To hold otherwise is to conclude that an individual transacts business in Virginia by doing nothing more than placing a classified ad in a national periodical specializing in used aircraft and then responding to an inquiry from a prospective buyer and its bank in Virginia. Such a result would convert the Long Arm Statute from a "single act" statute to a "single act of any kind or nature whatsoever" statute, a result neither intended by the General Assembly, nor permitted by the statutory language. In sum, Virginia Code § 8.01–328.1(A)(1) does not fit the instant facts.

■ Neither do subsections (A)(2) or (A)(3) fit these facts. Defendant did not contract "to supply services or things in [Virginia]." The contract makes clear that the parties deemed the agreement made in Colorado and it is not disputed that the aircraft was delivered there as well. Thus defendant contracted in Colorado to supply an aircraft in Colorado. Similarly, tortious injury, if any, did not result from any "act or omission [by defendant] in [Virginia]."

■ By contrast, subsections (A)(4) and (A)(5) apparently fit these facts. Subsection (A)(4) fits the tort claims. The complaint alleges tortious injury in Virginia and it appears that the acts or omissions relied upon occurred outside Virginia. Moreover, it further appears that by receiving $119,850 for the sale of the aircraft which was to be used in Virginia, defendant derived "substantial revenue from goods used or consumed ... in this Commonwealth." Va. Code § 8.01–328.1(A)(4).[3] Similarly, the warranty claims seem to fit under subsection (A)(5). The complaint alleges breaches of express and implied warranties with respect to the aircraft which defendant knew was to be used, at least in part, in Virginia and from which defendant derived substantial revenue. Since (A)(4) and (A)(5) of the Long Arm apparently reach the tort and warranty claims respectively, it is necessary next to consider whether this reach is constitutionally permissible.

■ Over the years, courts have refined the "minimal contacts" due process standard for personal jurisdiction announced in *International Shoe,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[4] Starting with *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Supreme Court focused on the conduct of defendant and required evidence that defendant had

---

**2.** *Ajax Realty Corp. v. J.F. Zook, Inc.,* 493 F.2d 818, 821 n. 4 (4th Cir.1972) (manufacturer did not transact business in Virginia by shipping defective windows directly to Virginia as an accommodation to out of state distributor), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973). *See also Erlanger Mills v. Cohoes Fibre Mills, Inc.,* 239 F.2d 502, 507 (4th Cir. 1956); Note, *The Virginia "Long Arm Statute",* 51 Va.L.Rev. 719, 737 (1965), which states:

The cases seem unanimous in holding, whether as a matter of statutory interpretation or of due process, that the shipment of goods into a state, without more, does not constitute transaction of any business. Nor was the shipment of goods plus merely 'incidental activity' such as billing or negotiating thereafter in the state concerning defects in the goods held to be transaction of business in one case.

**3.** *See Ajax Realty Corp.,* 493 F.2d 818, 821 (4th Cir.1972) (receipt of $37,000 for sale of defective windows used in Virginia sufficient to satisfy (A)(5) revenue requirement). But this point may not be as straightforward as it seems. There was no evidence offered on defendant's profit on the sale. It may have been only a fraction of the sale price and if defendant acted as a seller's agent rather than a broker buying and selling for his own account, then he may not have derived substantial revenue from the sale either absolutely or proportionately.

**4.** This standard simply required that the defendant have sufficient contacts with the forum such that maintenance of the suit there not offend "traditional notions of fair play and substantial justice." *International Shoe Co.,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

purposefully availed himself of the privilege of conducting activities in the forum state, "thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1240. Further refinements came in the *World–Wide Volkswagen,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and *Burger King,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), decisions. In the former, the Court noted that "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567. And as *Burger King* makes clear, it is immaterial that defendant knows that Virginia is the product's ultimate destination; the foreseeability of injury in a distant forum is not the touchstone of minimum contacts. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183.

■ These tests, applied here, disclose an absence of minimal contacts necessary to sustain personal jurisdiction. Far from purposefully availing himself of the privilege of conducting activities in Virginia, defendant stayed in Colorado, insured that the contract was deemed made in Colorado and governed by Colorado's laws and delivered the aircraft in Colorado. Mere advertising in a periodical is not purposefully availing oneself of the privilege of conducting activities in every state where it might be published or read. Nor can anything defendant did in connection with the aircraft sale be said to have put him on notice that he might be haled into court in Virginia. Again, the contrary appears; defendant seems to have taken pains to draft the contract and structure the transaction in a manner calculated to make it unlikely or not reasonably foreseeable that he would be haled into a Virginia court. Had he advertised in a Virginia publication, had he omitted the contract language deeming Colorado as the place of the contract and as

providing the governing law, had he delivered the aircraft to Virginia or had he taken on continuing obligations to PRI,[5] then the result here might well be different. Given the facts as they are, however, the quality and nature of this defendant's activities[6] with respect to Virginia are not sufficient to sustain jurisdiction without offending "traditional notions of fair play and substantial justice." *International Shoe Co.,* 326 U.S. 310, 316, 66 S.Ct. 154, 158.

Existing authority supports the result reached here. Thus, in *Erlanger Mills v. Cohoes Fibre Mills,* 239 F.2d 502 (1956), the Fourth Circuit held that there were no minimum contacts in North Carolina where plaintiff, a North Carolina mill, ordered yarn from defendant's New York plant after visiting the plant and the yarn was shipped f.o.b. New York. *Id.* at 507. Nor did the Court think it significant that a representative of defendant visited North Carolina after plaintiff complained about the yarn. *Id.* at 508–09. There, as here, the defendant's sole contact with the forum state was a contract for the sale of goods. The contract was not made in the forum state nor governed by its laws and the goods were delivered to plaintiff outside the forum state. *See id.* at 504. Of course, in both *Erlanger Mills* and this case, it was foreseeable that the goods would be used in the forum state. But Judge Sobeloff's exhaustive opinion makes clear that this is not enough. *Id.* at 507–08. While *Erlanger Mills* does not involve a provision requiring derivation of "substantial revenue," this distinction is not decisive, for the limits of due process do not vary with the terms of the statute. The constitutional grasp is independent of a statute's reach.

Also supportive of the result reached here is *Golden Belt Mfg. Co. v. Janler*

---

5. The importance of continuing obligations connected to the forum state was made clear in *Burger King,* 471 U.S. 462, 473, 480–82, 105 S.Ct. 2174, 2182, 2186–87; *see also Wiener King Systems, Inc. v. Brooks,* 628 F.Supp. 843, 848 (W.D. N.C.1986).

6. The proper focus is defendant's activities. "'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" *Burger King,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)).

*Plastic Mold Corp.*, 281 F.Supp. 368 (M.D. N.C.1967), *aff'd*, 391 F.2d 266 (4th Cir. 1968). There, defendant, a Chicago plastic mold manufacturer, contracted with plaintiff, a North Carolina concern, to ship a mold to North Carolina, f.o.b. Chicago. *Id.* at 370. Contact was initiated by plaintiff, and defendant submitted a quotation by mail to plaintiff in North Carolina. *Id.* Plaintiff responded with, in effect, a counteroffer which defendant accepted by returning a signed copy of plaintiff's purchase order. *Id.* On these facts, the Fourth Circuit affirmed the district court's conclusion that jurisdiction over the defendant would offend due process. *Id.* Again, the essential facts are quite close to those at bar. In both cases, the sole contact with the forum state is a single contract to provide goods to be used in the forum state, but the goods are delivered in defendant's state and the contract is neither made in the forum state nor governed by its laws. In both, defendant submitted material and contract documents by mail to plaintiff in the forum state and in both, plaintiff initiated the contact.[7] In both,

due process precludes personal jurisdiction.[8]

Just as decisions denying jurisdiction on due process grounds support this result, so too, inferentially, do those that find jurisdiction. A number of decisions upholding personal jurisdiction do so on the basis of factors not present here. Some sustain jurisdiction on the ground that the defendants involved reached beyond one state to create *continuing* relationships and obligations with citizens of the forum state.[9] Under these circumstances, the defendants involved could surely reasonably foresee being haled into court in Virginia. Similarly, those who cause defamatory information about a Virginia citizen to be published in Virginia can reasonably expect to be haled into court here. *See Blue Ridge Bank v. Veribank, Inc.*, 755 F.2d 371, 374 (4th Cir.1985); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–75, 104 S.Ct. 1473, 1477–78, 79 L.Ed.2d 790 (1984). None of these circumstances are present here. On the contrary, the instant defendant is an individual, not a manufacturing corporation, a franchiser or an insurance

**7.** One court suggests this latter point is a dispositive factor. *See Nueva Eng'g, Inc. v. Accurate Elec., Inc.*, 628 F.Supp. 953, 955 (D.Md.1986); *Cf. Ramsey Prod. Corp. v. Morbark Indus., Inc.*, 823 F.2d 798, 800–02 (4th Cir.1987). This perhaps overstates the matter. The point, however, is that the analysis of contacts must be qualitative, not quantitative. *See Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062, 1068 (4th Cir.1982). It is fair to say that the outcome in this case might well be different had defendant sought out PRI in Virginia or specifically solicited in Virginia. Advertising in a national periodical cannot be equated with such specific solicitation, especially where defendant made efforts to insure that the contract was formed in Colorado, not Virginia, and would be governed by Colorado's laws, not Virginia's. Defendant also took the step of requiring PRI to travel to Colorado to inspect and take delivery of the aircraft. These facts make unmistakably clear that defendant here did what he reasonably could to *avoid* availing himself of Virginia's privileges and protections and to make it unlikely and unforeseeable that he could be haled into court here.

**8.** *See also Chung v. Nana Dev. Corp.*, 783 F.2d 1124 (4th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986), which is consistent with the conclusion reached here. There, due process precluded the assertion of jurisdiction over an Alaska seller of reindeer

antlers bought and delivered in Alaska simply because defendant, as an accommodation to plaintiff, shipped some of the goods directly to Virginia. *Id.* at 1125–26. The point is that the defendant in *Chung* and the instant defendant, both individuals, not corporations, did nothing to purposefully avail themselves of the privilege of conducting business in the forum state. *See id.* at 1128, 1130. They could not reasonably foresee being haled into court here. And, as noted, defendant here took specific steps to preclude this.

Also instructive is *Viers v. Mounts*, 466 F.Supp. 187 (W.D.Va.1979). There, a Virginia contractor agreed to build a house in Kentucky for Kentucky defendants. Some negotiations took place in Virginia. A dispute arose, and the Virginia contractor sued defendants in Virginia. The district court dismissed, holding that the negotiation of terms by the parties in Virginia was not enough to satisfy due process. *Id.* at 191–92. Defendant's contacts with Virginia in the case at bar fall short even of this.

**9.** *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 480–82, 105 S.Ct. 2174, 2182, 2186–87, 85 L.Ed.2d 528 (1985); *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 286–87 (4th Cir.1987); *Skelton v. Lowen*, 665 F.Supp. 469, 472 (E.D.Va.1987).

company, who took special precautions in the contract to ensure that, if haled into court, it would be in Colorado.[10] PRI, the corporate plaintiff, was free to reject these provisions, but instead chose to accept them, and therefore took the risk that without a clear agreement as to forum, a court might find an absence of minimal contacts in Virginia.

Because the Court has found that there is no jurisdiction over the person of this Colorado defendant, defendant's motion for transfer under Section 1404(a) is moot. As to transfer under Section 1406, the Court gave the plaintiff an opportunity to submit written material relating to this issue. Plaintiff chose not to do so. Apparently, plaintiff does not wish to pursue a transfer under Section 1406, and plaintiff has not shown the Court that justice requires transfer to Colorado. Accordingly, this action is dismissed without prejudice.

An appropriate Order accompanies this Opinion.

---

10. Presumably, no such contractual precautions were taken by the manufacturing defendant in

*Ajax Realty Corp.*, 493 F.2d 818 (4th Cir.1972).