**EAGLE AVIATION, INC., Plaintiff,**

v.

**Dr. Miles A. GALIN, George L. Lindeman and Flight Services Group, Inc., Defendants.**

**Civ. A. No. 3:89–1561–0.**

United States District Court, D. South Carolina, Columbia Division.

Nov. 15, 1989.

---

Cleste T. Jones, David J. Mills, McNair Law Firm, P.A., Columbia, S.C., for plaintiff Eagle Aviation, Inc.

William H. Davidson, II, Columbia, S.C., for defendant Dr. Miles A. Galin.

John F. Beach, Columbia, S.C., for defendant George L. Lindeman.

Daryl L. Williamson, Sue C. Erwin, Columbia, S.C., for defendant Flight Services Group, Inc.

### ORDER

PERRY, District Judge.

This matter is before the Court upon motion of defendants to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. All three defendants move for dismissal under Rule 12(b)(2) for lack of personal jurisdiction. In the event this Court were to have found personal jurisdiction, defendants Galin and Lindeman moved for transfer of venue pursuant to 28 U.S.C. section 1404(a). Defendant Flight Services Group, Inc. (hereafter "FSG") alone moved to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief could be granted on the ground that because it was acting as an agent for disclosed principals, it could not be liable on the contract that is the subject of this action.

This Court, holding that it lacks personal jurisdiction over the defendants, finds it necessary and proper to address only the 12(b)(2) motions. *Cogburn v. MacFadden Publications, Inc.,* 129 F.Supp. 535, 537 (D.S.C.1955); *see, e.g., Rhea v. Muskogee General Hospital,* 454 F.Supp. 40 (E.D.Ok. 1978) (holding that 28 U.S.C. section 1404(a) cannot be utilized when Court has no personal jurisdiction over defendant.), *accord, Beh v. Ostergard,* 657 F.Supp. 173 (D.N.M.1987).

## FACTS

The Complaint of Eagle Aviation, Inc. (hereafter "Eagle") alleges only one cause of action, breach of contract. The following are the pertinent facts as gleaned from the complaint. None of the three defendants is a resident of the state of South Carolina (¶¶ 2 and 3). The subject of the suit is an alleged breach of contract for the sale of an airplane owned by the two individual defendants, Galin and Lindeman (¶¶ 7 and 14). Defendant FSG was "[a]t all times relevant hereto … the exclusive authorized agent of the defendants Dr. Galin and Mr. Lindeman regarding the sale of the aircraft in dispute," and plaintiff's offer to purchase the aircraft was "extended to defendant FSG, as authorized representative of the defendants Dr. Galin and Mr. Lindeman" (¶¶ 6 and 7). Defendant FSG accepted plaintiff's offer to sell plaintiff the aircraft (¶ 7). Plaintiff deposited $50,000.00 into "defendant FSG's account as a credit against the full purchase price of the aircraft" (¶ 10).

By affidavit of defendants, other uncontroverted facts were established, all of which were admitted by plaintiff at oral argument of the motions. None of the defendants is present in South Carolina, nor do any of them have agents, offices, property or agents for service of process in this State. None of the three makes sales calls in this State, nor have any of them published advertising in purely South Carolina publications. Plaintiff initiated contact with defendant FSG by telephoning FSG's office in Connecticut. This initial contact and subsequent telephone conversations led to a May 3, 1988, offer letter being mailed from plaintiff in South Carolina to FSG in Connecticut; this letter offer was signed by FSG's Frederick Henninger on May 4 in Connecticut, and was returned via telecopier that date to plaintiff's South Carolina location. A pre-purchase inspection was conducted by plaintiff in Connecticut. Plaintiff prepared and sent a form "Aircraft Sale Agreement" to defendant FSG in Connecticut on or about May 18, 1988. This form agreement was signed by plaintiff, but was never signed by any one of the defendants; it indicated plaintiff intended delivery of the plane to take place in Connecticut.

## ANALYSIS

█ It is plaintiff's burden to prove facts necessary to support personal jurisdiction. *Nicholas v. Buchanan,* 806 F.2d 305, 307 (1st Cir.1986). Alleging that the suit arises out of a contract to be performed in South Carolina, plaintiff asserts that personal jurisdiction over this defendant exists pursuant to section 36–2–803 of the Code of Laws of South Carolina Annotated (1977) (the "long-arm statute") Complaint ¶ 4. Although the parties are in disagreement as to the application of the State's long-arm statute, the Court finds that it need not reach this issue.

█ South Carolina has interpreted its long-arm statute to grant as broad a reach of jurisdiction as is constitutionally permissible. *See Triplett v. R.M. Wade & Co.,* 261 S.C. 419, 200 S.E.2d 375, 378–79 (1973) (dictum). For this reason, as the Fourth Circuit explained in *Hardy v. Pioneer Parachute Co., Inc.,* 531 F.2d 193, 195 (4th Cir.1976), the long-arm statute question "collapses into" the due process analysis. *Id.*

The due process clause of the Fourteenth Amendment provides that a nonresident defendant cannot be subjected to personal jurisdiction in a forum unless he has sufficient "minimum contacts" with the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). "[A] defendant will not be haled into a jurisdiction solely as a re-

sult of 'random,' 'fortuitous,' or 'attenuated contacts,'" [*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted)] or due to the "unilateral activity of another party or a third person." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *World–Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

There is nothing before the Court here that indicates the defendants purposefully availed themselves of the privilege of conducting business activities in South Carolina to the extent necessary to find personal jurisdiction over them in this case; rather, the Court finds that defendants' relations with South Carolina were unique and insignificant, and that it was plaintiff's —not defendants'—acts that form the basis for the claim of jurisdication here. *Cancun Adventure Tours, Inc. v. Underwater Designer Co.* 862 F.2d 1044 (4th Cir.1988). To find jurisdiction over defendants under the facts here presented would be to act contrary to the dictates of Fourth Circuit precedent.

After the hearing in this matter, plaintiff submitted additional authority for its contention that personal jurisdiction exists over the out-of-state defendants: *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044 (4th Cir.1988). Although plaintiff asserts that the facts of *Cancun* are identical for purposes of the Court's jurisdictional analysis, there are several crucial distinctions that plaintiff ignores: in *Cancun*, the contract that was allegedly breached was the second proposed contract that defendant had purposefully transmitted into the forum; while the first proposal was solicited by the plaintiff, the second proposal (which was the subject of the subsequent lawsuit in *Cancun*) came, apparently unsolicited, from the defendant to the plaintiff; the second proposal was signed in the forum state, and thus created a contract entered in the forum; the law of the forum was applied to the substantive issues concerning the subsequent breach of the contract. Too, in *Cancun*, there was performance, as opposed to nonperformance, of the contract: there were months of regular and purposeful dealings by the defendant, directed at the plaintiff in the forum. It was all of these acts—from the unsolicited proposal plaintiff sent into the forum, to its dealings in the forum in a vain attempt to comply with the contract it had solicited—that supplied defendant with the requisite "fair warning" that its course of activities might subject it to the jurisdiction of the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 at 472, 105 S.Ct. 2174 at 2182, 85 L.Ed.2d 528 (1985). Here, however, there was no initial contact by any one of the defendants, no written proposal sent into the forum by a defendant, and no acceptance of a proposal here. There is no question but that the contract was entered in Connecticut and that the law of Connecticut would have applied to questions of its interpretation. These critical facts are decisive under the jurisdictional analysis applied by the Fourth Circuit in *Cancun*, and clearly require a different conclusion under the uncontroverted facts of this case.

It appears from the face of Eagle's complaint and from the affidavits submitted in support of the motions to dismiss under Rule 12(b)(4) that an "offer letter" and form contract were delivered to defendant in Connecticut, and that the "offer letter" was signed in Connecticut. Thus any contract arising therefrom was entered into in Connecticut. *Green v. Industrial Life & Health Ins. Co.*, 199 S.C. 262, 18 S.E.2d 873 (1942); *First Citizens Bank & Trust Co. v. Strable*, 292 S.C. 146, 355 S.E.2d 278 (App. 1987). No acts contemplated by the alleged contract were to have been performed in South Carolina; the breach alleged, *i.e.*, nondelivery of the airplane, occurred in Connecticut, where the parties intended it to be delivered.

The circumstances here are more analogous to those presented in *Chung v. NANA Development Corp.*, 783 F.2d 1124 (4th Cir.1986), than to the facts of *Cancun*, and it is *Chung* that the Court finds dispositive. In *Chung* the plaintiff, a Virginia resident, who had entered into a contract

*in Alaska* with an Alaskan corporation for the sale of frozen reindeer antlers.[1] As in the instant case, negotiations leading up to the signing of the contract occurred over the telephone; as here, the forum resident's initial contact with the out-of-state defendant was by telephone, when the plaintiff in Virginia called the defendant in Alaska. The contract was entered in Alaska, and plaintiff made payment there.

Delivery was to have occurred in Alaska; however, when plaintiff traveled there to get the antlers, only 120 pounds of the total contract poundage of 500 pounds were ready for him. Arrangements were made to ship the remainder to plaintiff in Virginia the following day. Upon arrival of the 380 pounds of antlers in Virginia, plaintiff found that they had thawed, becoming spoiled and unusable. He filed suit in Virginia, claiming his loss resulted from defendant's failure to insure the antlers. Based on these facts, the Fourth Circuit found the Virginia court lacked personal jurisdiction over the Alaskan defendant.

The facts of *Chung* parallel those here, with one important exception: delivery of the airplane was not to be made in South Carolina, nor was it contemplated under the contract. FSG signed the purported contract in Connecticut. The breach, if any, occurred in that state as well. The defendants' minimal contact with South Carolina—acts outside the state that led to the appearance of an ad in an international publication in this State, and participation in telephone communications initiated by the plaintiff in this state—were random, fortuitous, and attenuated. These acts were quite different in quality and nature from the purposeful contacts with the forum by the plaintiff in *Cancun, supra.*

The contacts of defendants here are clearly not of a quality or nature to support this Court's exercise of jurisdiction over defendants. *See, Stuart v. Spademan,* 772 F.2d 1185, 1193–94 (5th Cir.1985) (exchange of communications between a forum resident and a nonresident in developing a contract was not sufficiently purposeful activity to obtain personal jurisdiction over nonresident in forum); *Cancun Adventure Tours, Inc. v. Underwater Designer Co., supra,* and *Loumar, Inc. v. Smith,* 698 F.2d 759, 763–64 (5th Cir.1983) (suggesting that advertising in national publication was insufficient to permit assertion of personal jurisdiction over nonresident advertiser); *Scullin Steel Co. v. Natl. Ry. Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982) (use of interstate telephone and mail was "secondary or ancillary" factor insufficient to provide minimal contacts required by due process); *Baker v. Livsey,* 1988 WL 17635, 1988 U.S. Dist. LEXIS 1339 (N.D.Ill.1988) ("A few telephone calls to Illinois, and some confirmatory correspondence, are insufficient to constitute 'doing business' in Illinois when the transaction involves a one-time sale of land in Georgia, and the contract was signed in Georgia." *Id.,* 1988 WL 17635 at 1, 1988 U.S. Dist. LEXIS 1339 at 3–4. "[T]he defendants have neither been physically present in Illinois nor have they promised to perform an act in Illinois." *Id.,* 1988 WL 17635 at 2, 1988 U.S. Dist. LEXIS 1339 at 4.)

Another case decided in this circuit on virtually identical facts has further convinced this Court that this case must be dismissed. In *Processing Research, Inc. v. Larson,* 686 F.Supp. 119 (E.D.Va.1988), the Virginia District Court found it did not have personal jurisdiction over the Colorado seller of an airplane, and granted the defendant's motion to dismiss on this ground. The facts of that case are quite similar to those here: the resident plaintiff saw an advertisement for a used airplane in a national publication; it telephoned the

---

**1.** In a footnote, the Court explained:

NANA operates a range of two million acres in Alaska, with a herd of some 5,000 reindeer. The reindeer are rounded up annually, using helicopters, and their horns clipped. By the next year the antlers regrow. After clipping the horn is frozen, as it contains blood and is perishable, spoiling quickly if thawed.

The antlers, following processing, are sold in various Asian countries, where they are used as a tonic for "promoting strengths of body in particularly weak people," according to plaintiff. Evidently reindeer antler is believed to have aphrodisiac properties.

*Id.* at 1125, n. 1.

out-of-state airplane broker; a series of telephone calls ensued, some initiated by plaintiff and some by defendant; plaintiff alleged that defendant made misrepresentations concerning the plane; plaintiff sent a down payment from the forum to the out-of-state defendant; delivery of the plane occurred out of the forum. Thereafter, the Virginia plaintiff sued the Colorado defendant in Virginia, alleging several causes of action: breach of contract; breach of warranty (three causes of action) fraud; and innocent misrepresentation.

The District Court, relying on Fourth Circuit precedent, granted defendant's motion to dismiss on the ground that the "quality and nature of this defendant's activities with respect to [the forum] are not sufficient to sustain jurisdiction without offending 'traditional notions of fair play and substantial justice.'" *Id.* at 123. The Court found that "[m]ere advertising in a periodical is not purposefully availing oneself of the privilege of conducting activities in every state where it might be published or read." *Id.* The Court did not find that the telephone calls back and forth were important, finding significant only the fact that, as here, "plaintiff initiated the contact." *Id.* at 124. Also material was a finding that "[t]he contract was not made in the forum state nor governed by its laws and the goods were delivered to plaintiff outside the forum state." *Id.* at 123.

■ Any contract that may have existed between the parties to the instant case was negotiated, finalized, and executed by defendants or their agent in Connecticut. The alleged contract arose in Connecticut. If any breach occurred, it too occurred in Connecticut. These differences with the facts of *Cancun* are crucial, and dispositive of the jurisdictional issue here. That the defendants placed an advertisement in an international publication is not sufficiently purposeful contact with the state of South Carolina to justify a finding of personal jurisdiction over the defendants in this forum. Plaintiff has failed to show facts that support this Court's exercise of jurisdiction over defendants, thus this ac-

tion must be dismissed pursuant to Rule 12(b)(2).

The Court has previously granted indefinite extensions of time to all parties to respond to pending requests for admission. Because this action is hereby dismissed, the parties are relieved from any duty to respond to those requests.

AND IT IS SO ORDERED.