## CIRCUIT COURT OF FAIRFAX COUNTY

Mueller

    v.

Dyncorp

    v.

Kellogg Co.

December 13, 1989

Case No. (Law) 80820

By JUDGE JOHANNA L. FITZPATRICK

This case was heard on Friday, December 1, 1989, at which time three matters were addressed: (1) Kellogg's Motion for Substitution of Counsel; (2) the entry of an Order which resolved Dyncorp's demurrers from the spring of 1988; and (3) Kellogg's Motion to Quash Service of Process.[1] The Court entered an Order substituting McGuire, Woods as counsel for Third-Party Defendant Kellogg Company in place of Lowe, Price. Mr. Toothman and Mr. Auerhan voiced their objections for the record.

At the same time, argument was heard concerning the disposition of certain demurrers sought by Dyncorp on March 31, 1988, prior to Dyncorp's filing a Third-Party Motion for Judgment against Kellogg. There was apparently some confusion concerning (1) the counts as to which demurrers had been sustained, (2) whether the dispositions

---

[1] Unless otherwise specified, "Kellogg" will be used to refer to Kellogg U.S.

were with or without prejudice, and (3) whether an appropriate order had ever been entered.

Upon examination of the Court's file, two pertinent Orders were located, one of which was signed on May 11, 1988. By that Order, the demurrers to Counts II, III, and IV were sustained without prejudice, as was the demurrer to Mueller's claim for attorney's fees. Given this disposition, it would be inappropriate to enter another Order on those issues at this time. Mr. Auerhan should make arrangements to endorse the Court's original Order at his convenience.

The last issue concerns this Court's jurisdiction over Kellogg. For the reasons stated below, and as explained in my recent telephone conversations with counsel, Kellogg's Motion to Quash is granted.

This litigation grew out of contract disputes among Mueller, Dyncorp, and Kellogg (or, more precisely, between TCI, State, and Kellogg-Salada, the respective Canadian subsidiaries of the parties to this suit). An earlier Canadian suit between State and Kellogg was settled in August of 1986. Mueller then filed the instant suit on September 3, 1987, claiming in part that Dyncorp wrongfully settled that Canadian suit without taking TCI's claims into account, as Dyncorp had allegedly promised to do.

Dyncorp filed a Third-Party Motion for Judgment against Kellogg on June 13, 1989, claiming in part that Kellogg had allegedly agreed during those settlement negotiations to indemnify State and Dyncorp against any claims subsequently brought by TCI or Mueller. Dyncorp based jurisdiction over Kellogg on § 8.01-328.1, Virginia's long-arm statute. Kellogg filed a demurrer on August 4, 1989, claiming that its contacts with this forum are insufficient to permit this Court to assert long-arm jurisdiction.[2] Dyncorp subsequently filed an Amended Third Party Motion for Judgment on September 25, 1989, adding another basis for jurisdiction under § 13.1-758, the Virginia State Corporation Act. Kellogg then filed a Motion to Quash

---

[2] Dyncorp had initially contended that Kellogg's demurrer should be taken as a general appearance according to Virginia civil procedure. The Court has already explained that personal jurisdiction is a question of law, not a fact which Kellogg admitted by demurring.

Service of Process of Amended Third Party Complaint on October 9, 1989. Additional briefs were filed in response to this Motion, and oral argument was heard on December 1, 1989.

Kellogg is not a Virginia corporation, has not made a general appearance in this case, and has not otherwise consented to this Court's jurisdiction. The burden therefore rests on Dyncorp to establish the basis for this Court's jurisdiction over Kellogg. Dyncorp's first theory is that the Court may assert personal jurisdiction under Section 13.1-758(F). Dyncorp argues that Kellogg's activities in Virginia subject it to this Court's jurisdiction because Kellogg has conceded that it regularly conducts business in Virginia through its wholly-owned subsidiary, Kellogg Sales Corporation (and that it derives substantial revenues therefrom) despite the fact that Kellogg has not obtained a certificate of authority from the Virginia State Corporation Commission.

The first problem with this argument is that Dyncorp is relying on "facts" which were actually concessions made at a time when Dyncorp's only alleged basis for jurisdiction over Kellogg was under the long-arm statute. These concessions were expressly made "for purposes of th[e] demurrer" only: Kellogg was simply arguing that even this amount of activity would be insufficient to support the assertion of long-arm jurisdiction since Dyncorp's causes of action allegedly did not arise from the activity being conceded (as required by § 8.01-328.1(B)). It would be inappropriate to rely on these concessions to support a finding of personal jurisdiction under an alternative theory. Instead, the Court relies on Kellogg's Answers to Dyncorp's Interrogatories Regarding Jurisdiction dated September 8, 1989, as well as its Supplemental Answers dated October 27 and the documents submitted in support thereof.

It has already been decided that "a much stronger showing of in-state activities is required in order to invoke the sanctions of corporate qualification statutes than is required either to subject a state to local taxation or to service of process." *Continental Properties, Inc. v. The Ullman Co.*, 436 F. Supp. 538, 540-41 (E.D. Va. 1977). This result is consistent with § 13.1-757(B), which lists the types of activity which are not sufficient to

support jurisdiction under § 13.1-758. These activities include:

(1) Maintaining, defending, or settling any proceeding;

(5) Selling through independent contractors;

(9) Owning, without more, real or personal property.

At best, Kellogg's contacts with Virginia are as follows:

1) It had some communications with officers of a Virginia corporation to settle a Canadian lawsuit (*see* Supplemental Answers to Interrogatory Nos. 8, 8a, 9, and 9a);

2) It owns a company (Kellogg Sales Corp.) which sells goods produced by other wholly-owned subsidiaries located outside Virginia to independent contractors (*see* Answers to Interrogatory Nos. 2, 4, 5, and 6);

3) It owns some personal property (rolling stock) which transits through Virginia for which it pays Virginia state taxes; and

4) It owns no other real or personal property in Virginia (*see* Answer to Interrogatory No. 10).

These activities are all strictly within § 13.1-757(B). In sum, Dyncorp has failed to establish sufficient in-state activity to support a finding of jurisdiction under Section 13.1-758(F) in this case. *Accord, Bowles v. Hill*, E.D. Va. Civil Action No. 88-1344-A, decided April 26, 1989.

Dyncorp contends in the alternative that this Court could base its jurisdiction over Kellogg on Virginia's long-arm statute. Dyncorp maintains that its third party claims against Kellogg arise from Kellogg's contacts with Virginia (*i.e.*, the settlement negotiations) and then reminds the Court that ours is a single-transaction long-arm statute. Kellogg contends that all of the Counts alleged in the Amended Third Party Motion for Judgment arise from the Canadian construction contract. This dispute need not be resolved at this time because in any event Dyncorp has failed to meet the threshold requirement of showing that these contacts satisfy the constitutional minimum.

Dyncorp correctly observes that claims under Section 8.01-328.1 must arise from the asserted jurisdictional contacts. Kellogg's pertinent contacts are set forth in its Supplemental Answers to Interrogatory Nos. 8, 8a, 9, and 9a. These Answers make it clear that Kellogg's

only pertinent contacts are few in number and occurred only when Dyncorp personnel happened to be in Virginia.[3]

The cases of *Processing Research, Inc. v. Larson*, 686 F. Supp. 119 (E.D. Va. 1988), and *Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 396 (E.D. Va. 1984), are on point. There, the District Court explained that mere telephone conversations and letters negotiating a transaction (*Processing Research*, 686 F. Supp. at 122) or settling a lawsuit (*Unidyne*, 590 F. Supp. at 396) do not satisfy the minimum contacts required by due process. The same result obtains here; Kellogg's contacts are insufficient to satisfy constitutional due process requirements.

The Court expresses no opinion at this time as to (1) which of the Counts in the Third Party Motion for Judgment, if any, arise from Kellogg's Virginia contacts, or (2) Kellogg's potential derivative liability to Dyncorp. And of course there is no need to address any of the third party practice issues raised by the parties, such as the relationship between Mueller's claims against Dyncorp and Dyncorp's claims against Kellogg. The Court simply holds that this is not the proper forum in which to resolve Kellogg's potential liability.

Kellogg's Motion to Quash Service of Process is accordingly granted.

---

[3] Various meetings were held outside Virginia; two letters were sent between Kellogg and Dyncorp (both of them dated after the settlement negotiations were completed); and there were certain phone calls, some of them occurring while Dyncorp officers were in Virginia.